THE STATE OF OHIO, APPELLEE, *v.* LOLESS, APPELLANT.

(No. 85AP-738—Decided February 27, 1986.)

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, and *David E. Tingley,* for appellee.

*James P. Kura,* county public defender, and *Gregory W. Meyers,* for appellant.

NORRIS, J. This matter is before us on defendant's appeal from his conviction for inducing panic, as defined by R.C. 2917.31. His sole assignment of error concerns his contention that R.C. 2917.31 is unconstitutional on its face and as applied to him.

Defendant was charged in connection with a letter he delivered to various Columbus television stations and newspapers. Excerpts from this letter follow:

"I have altered the superstructure of 22 bridges in the state of Ohio. At this point the damage is minor and can be corrected with very little time and cost. On the outher [*sic*] hand if it is not found and corrected soon it may cause the structure to fail.

"I will show O.D.O.T. [Ohio Department of Transportation] where each bridge is located and what has been done

to it, when the public has had a chance to see how the O.D.O.T. Director has used the discretion that is set forth in the contract."

When defendant's motion to dismiss the charge on the ground that R.C. 2917.31 is unconstitutional was overruled, he entered a plea of no contest and was found guilty by the trial court.

Defendant contends that the statute is unconstitutional on two separate grounds: that (1) it is vague; and (2) it is overbroad.

We will first consider defendant's overbreadth argument. In essence, he contends that R.C. 2917.31 is unconstitutional in that it could be applied to persons engaging in speech, which is protected by the First Amendment right to freedom of expression, who are not now before the court, and that the statute is unconstitutional as applied to him because it punishes bare statements, even if known to be false, which are unaccompanied by overt acts.

The challenged statute reads, in pertinent part, as follows:

"(A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:

"(1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false[.]"

The general rule governing the standing of a party to challenge the constitutionality of legislation is that a litigant to whom a statute may be applied will not be heard to challenge the statute on the ground that it conceivably may be applied unconstitutionally to others, in situations not before the court. *Broadrick* v. *Oklahoma* (1973), 413 U.S. 601, 610. The United States Supreme Court has fashioned an exception to the traditional rule governing standing because of the danger of tolerating, in the area of First Amendment

freedoms, the existence of a penal statute susceptible of application to protected activities. *Freedman* v. *Maryland* (1965), 380 U.S. 51. Likewise, our Supreme Court specifically follows this principle of law and recognizes the assertion of such claims as a First Amendment exception to the traditional doctrine of standing. See, *e.g., State* v. *Daniels* (1980), 61 Ohio St. 2d 220, 15 O.O. 3d 232, 400 N.E. 2d 399; *State* v. *Phipps* (1979), 58 Ohio St. 2d 271, 12 O.O. 3d 273, 389 N.E. 2d 1128; *State* v. *Diana* (1976), 48 Ohio St. 2d 199, 2 O.O. 3d 387, 357 N.E. 2d 1090.

The right of free speech is not without limits. Speech is not an absolute above and beyond the control of the legislature. Statements alone may have the effect of force and fall outside First Amendment protection. While the right of free speech entitles citizens to express their ideas, beliefs, and emotions, regardless of their popularity, it does not extend to the threatening of terror, inciting of riots, or verbalizing of false information that induces panic in a public place. *Schenck* v. *United States* (1919), 249 U.S. 47; *United States* v. *Rutherford* (C.A. 2, 1964), 332 F. 2d 444, 446.

In this instance, the statute under consideration proscribes the imparting of information, knowing the information to be false, that seriously alarms or inconveniences the public. The conduct criminalized falls squarely within the principle of the false cry of "fire" in a crowded theater, the classic illustration of unprotected speech. *Schenck* v. *United States, supra,* at 52. The legislative concern is the public "panic" situation. The aim of the statute is not to abridge an individual's right to communicate his thoughts, but to regulate harmful conduct that can find no protection of freedom of expression under the First Amendment. The statute requires, in order for there to be a conviction, conduct which exceeds the bounds of pro-

tected speech which the state manifestly has a legitimate interest in proscribing in order to maintain the public peace. Under these circumstances, we find that the statute is not unconstitutional on its face for overbreadth.

Apparently, defendant was a contractor who had performed bridge repairs for the Ohio Department of Transportation. Because we are unable to agree with his characterization of his conduct as "publicly airing his grievances" with the department and protected by the First Amendment, we see nothing unconstitutional in the manner in which the statute was applied to him. By purposefully circulating a false report to television media warning of the collapse of bridges, defendant intended to gain leverage to air his grievances with the Director of the Ohio Department of Transportation. Clearly, this report was in the nature of a threat. Threats are not a form of speech protected by the First Amendment. Accordingly, we reject defendant's argument that his actual conduct cannot be regulated under the statute. And, by entering a plea of no contest, he admitted the truth of the facts alleged in the complaint — that he did cause serious public alarm by disseminating a false report of an alleged crime which he knew to be false. Crim. R. 11(B)(2).

Defendant's first asserted basis for constitutional infirmity is rejected.

The second issue that defendant raises in his constitutional assault on R.C. 2917.31 is that the statute is impermissibly vague. He contends that the portion of the statute that criminalizes conduct which "cause[s] serious public * * * alarm" fails to meet the heightened standard of clarity and specificity demanded by the Constitution, and that the language lends the statute to unequal enforcement by public officials.

We begin our consideration of this contention with the principles that all legislative enactments enjoy a presumption of constitutionality, and that an appellate court reviewing a statute, which is being assailed upon its alleged vagueness, must apply all reasonable presumptions, interpretations, and applicable rules of construction so as to render the statute constitutionally definite. *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61, 4 OBR 150, 151, 446 N.E. 2d 449, 450.

The vagueness doctrine under the Due Process Clause of the Fourteenth Amendment contemplates that criminal responsibility should not attach where an individual could not with reasonable certainty understand that his proposed conduct is disapproved when measured against the language of the statute. See *United States* v. *Harriss* (1954), 347 U.S. 612. Due process requires reasonable definiteness in the language of the statute. Yet, a statute is not necessarily void for vagueness because it could have been more precisely worded. *Roth* v. *United States* (1957), 354 U.S. 476, 491, 14 O.O.2d 331, 337. As the United States Supreme Court observed in *Colten* v. *Kentucky* (1972), 407 U.S. 104, at 110:

"* * * The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. * * *"

The Constitution does not mandate a burdensome specificity. A legislative body need not define every word it uses in an enactment. " 'Words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them.' " *State* v. *Dorso, supra*, at 62, 4 OBR at 152, 446 N.E. 2d at 451, citing *Eastman* v. *State* (1936), 131 Ohio St. 1, 1 N.E. 2d 140, at paragraph five of the

8

syllabus; *Kiefer* v. *State* (1922), 106 Ohio St. 285, 139 N.E. 852. See, also, *State* v. *Glover* (1984), 17 Ohio App. 3d 256, 258, 17 OBR 524, 525, 479 N.E. 2d 901, 903.

We conclude that the language quoted above, as employed in the context of R.C. 2917.31(A)(1), consists of words in common use which may be construed in their ordinary acceptation and significance with the meaning commonly attributed to them, to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. Individuals who desire to conform to the statute will have no difficulty in understanding it. Accordingly, defendant's vagueness challenge to R.C. 2917.31(A)(1) is equally without merit.

Defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.