The STATE of Ohio, Appellee,

v.

VOGELSONG, Appellant.

The STATE of Ohio, Appellee,

v.

VOGELSONG'S, INC., Appellant.*

[Cite as *State v. Vogelsong* (1992), 82 Ohio App.3d 354.]

Court of Appeals of Ohio,
Franklin County.

Nos. 91AP–1282, 91AP–1283.

Decided Sept. 3, 1992.

*Lee Fisher*, Attorney General, *John A. Guthrie* and *Barbara J. Petrella*, Assistant Attorneys General, for appellee.

*Kimble, Stevens, Young, Clark & Rodeheffer* and *Steven C. Rodeheffer*, for appellants.

WHITESIDE, Judge.

Defendants appeal from their conviction of Medicaid fraud in violation of R.C. 2913.40(B). Case No. 91AP–1282 involves defendant James D. Vogelsong, R.Ph., personally, whereas case No. 91AP–1283 involves a corporation through which he operated Vogelsong's Family Pharmacy. A jury trial ensued with the jury finding both defendants guilty of Medicaid fraud. In support of their appeals, defendants raise two assignments of error as follows:

"1. The trial court erred in permitting the introduction into evidence of state's exhibit J in that the contents of that exhibit constituted hearsay in

violation of Evidence Rule 803 and the appellants' constitutional rights of confrontation.

"2. The trial court erred in failing to dismiss counts one and three of the indictment for the reason that Section 2913.40(B) of the Ohio Revised Code is unconstitutional by virtue of its being vague and overbroad in violation of appellants' due process rights."

These charges arise from the work of two undercover state agents. Each procured monthly welfare cards from a county welfare department under assumed names for the month of August 1989. They then obtained prescriptions from a doctor in Portsmouth, Ohio, for a number of different drugs. They then took these prescriptions to the Vogelsong Pharmacy for filling in Lucasville, Ohio, using their welfare Medicaid cards. Defendants filled the prescriptions and billed the Ohio Department of Human Services using the undercover agents' Medicaid card numbers.

In all, some nineteen prescriptions were filled. The state contends that on some occasions, the agents were given fewer pills than were called for in the prescription, but were billed for the full amount. In some instances, the pharmacy billed for name brand drugs, but filled the prescriptions with generic drugs and, on some occasions, filled the prescriptions with drugs of lesser strength than called for by the prescription. The state contends that, in all, with respect to the two agents, the Medicaid program overpaid defendants some $675.83 for the nineteen prescriptions. This amount was calculated from a so-called "reference file subsystem drug report" (trial exhibit J), which is the subject of the first assignment of error.

By their first assignment of error, defendants contend that the trial court erred in admitting exhibit J because it is strictly hearsay in violation of Evid.R. 803, as well as defendants' constitutional right of confrontation. The state, on the other hand, contends the exhibit was admissible, relying on Evid.R. 803(8)(A) and 901. The sole testimony concerning exhibit J was as follows:

"Q. And now, Mr. [Robert W.] Lewis, the duties of your job also include the responsibility for maintaining a document known as a report from the reference file subsystem?

"A. Yes, it does.

"Q. And could you briefly describe what a report from the reference file subsystem is?

"A. Yes, sir. A report from the reference subsystem—I might just first describe what the reference subsystem is.

"The reference subsystem is a computer file. Obviously we cannot read that file without seeing something on paper. A report is anything that comes from that file. The reference file is the listing of all of the procedures, drugs and diagnoses that we pay within the Medicaid program.

"Q. Again, is this a document that's authorized by law to be recorded or filed by the Ohio Department of Human Services and actually recorded or filed by that agency?

"A. Yes, it is.

"Q. Mr. Lewis, I'm handing you what's been marked as State's Exhibit J, and I'll ask you if you can identify that document?

"A. Yes. This is a series of individual drug reports from the reference file.

"Q. And what information, again briefly and in general terms, is contained on that report?

"A. This report contains the name of a particular—well, a set of particular drugs that the Department covers through its Medicaid program. It gives the, the kind of drug, the NDC number, the strength. It also gives the amounts that we pay for the drug, the unit price for the drug, as it were; and it gives the spans, because we might, we might increase or decrease the amount that we pay for a particular drug as time goes by, and so there's a span on there for each time that we do that."

As is readily apparent from reading the foregoing testimony, the requisites for admission of such exhibit have not been met either under Evid.R. 803(6), 803(8) or 901. With reference to Evid.R. 803(8), it provides that certain matters are not excluded by the hearsay rule, including:

"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) *the activities of the office or agency,* or (b) *matters observed pursuant to duty imposed by law* as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness." (Emphasis added.)

In other words, this rule applies to only two types of records, namely, (1) those that actually set forth the activity of the public office or agency, and (2) those reports required to be made by law as to matters actually observed by a public employee in carrying out duties imposed by law. According to the testimony set forth above, exhibit J fits neither of these prerequisites.

The state relies upon *State v. Ward* (1984), 15 Ohio St.3d 355, 15 OBR 477, 474 N.E.2d 300. That case supports defendants' argument rather than that of

the state. *Ward* involves a calibration log of intoxilyzer equipment based upon the observations of the officer calibrating the equipment. In addition, certified copies were admitted in that case. Here, there is no contention that exhibit J is a report by the testifying witness based upon his observation, or that such a report was required to be made by law. Likewise, by the testimony, it is quite clear that exhibit J does not set forth the activities of any state agency. In fact, from Lewis' testimony, it is somewhat unclear as to exactly what exhibit J is or how it is derived, except that it is in the computer and is used somewhat as a price list by him. Evid.R. 901 states in part that:

"(A) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

" * * *

"(7) *Public Records or Reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement or data compilation, in any form, is from the public office where items of this nature are kept."

The testimony of Lewis here does not constitute such evidence. Rather, the testimony of the witness is not that the records are kept in his public office but, instead, that they are accessible to him through a computer and are apparently maintained or originated in some other office to the extent that they might be a public record within the contemplation of this section.

Although Lewis testified that the Ohio Department of Human Services is the agency involved, he did not indicate that it was his office that was involved other than in retrieval and utilization of the so-called record, even though he described himself as being Chief of the Bureau of Claims Services. Lewis testified that claims can be submitted to the Medicaid program on a magnetic tape. When a provider submits the claim for payment on magnetic tape, a microfiche film record is made of each claim on the tape. These claims were different exhibits, namely, state's exhibits C–1 through C–13, and were admitted. Also admitted was evidence of remittance advices, which is a listing of claims that have been paid, listing various elements describing each claim and whether it was paid or denied.

On cross-examination, Lewis admitted that exhibit J was an electronic file stored in the computer. He also admitted that his office was not the source of the information but, instead, the source was the "Bureau of Medicaid Policy."

He described that bureau as "a group of people who review drug codes and decide what's going to be paid and what's not and how much is going to be put on the file." He admitted that the computer file was "a secondary source of information," and that it is "one step removed from the people that generated the information."

The basic problem is the lack of specificity in Lewis' testimony. He testified that his duties made him "responsible * * * for the receipt for the processing and * * * either payment or denial of all Medicaid claims that are received for the Medicaid program of Ohio." He further testified that a computer is utilized so that "they have a computer-operated or automated processing system." He stated that the computer runs "approximately 500 different edits and audits before it actually reaches the payment cycle." This is accomplished after the data received from the provider are entered into the computer, which, in this case, were apparently furnished by magnetic tape. Lewis also testified that the computer prices the claim and places it on a warrant tape that goes to the Auditor of State, where a warrant for payment is generated. Also generated is a document called a "remittance advice," which is a list of the claims paid with a particular warrant as well as those which were processed at the same time and not paid.

In short, according to Lewis' testimony, the only data put into the computer under his supervision were the provider claims received by magnetic tape or in written form. Somebody else, or some other section or division of the department, determined the program of the computer and made all other data input. From Lewis' testimony, his department had access to that data, but could not verify its accuracy or method of input.

In arguing for admission of the exhibit at trial, counsel for the state contended that Lewis was "the custodian of the information that's put into the computer." There is not a scintilla of evidence supporting this statement as it pertains to exhibit J and the data thereon. Rather, as indicated, the information or data of which Lewis was "custodian" were the payment requests received from providers either by magnetic tape or in written form and then input by his department into computers. After this input, Lewis' testimony was that the computer did all the remainder of the processing of the claim automatically without further data input or computer use by his division.

Exhibit J is a copy of a display screen unrelated to any particular claim, showing certain information concerning certain drugs, which information was put into the data bank of the computer by persons unknown, although Lewis knew that it was updated from time to time. His testimony did not indicate that it was this price list that the computer itself utilized in computing payments. In other words, these were merely data which Lewis is able to

access through the computer and print a copy of, although the data do not contain the entire price or information in the computer, but only information which he selected to have printed, which could be inferred to be all the information pertaining to the named drug.

█ It is not sufficient for admission of an alleged public record for a witness to state that this is information accessed through a computer operated by a public agency. Essentially, that is all that we have here. Lewis did testify that the referenced subsystem is a computer file authorized by law to be recorded or filed in the Department of Human Services and actually recorded or filed by that agency by an unobjected-to leading question. However, this is a question of law, not of fact, and, by his testimony, it would appear that the data were neither recorded nor filed by Lewis' agency but, rather, were merely information placed into a computer file by someone. There is no reference and no contention made that there is any law authorizing the recording or filing of this information.

█ In general, for the public-record exception to apply, the record must be one that is required by law to be maintained in the office in question whether originated by or filed in that office, or the nature of the record must be such that there is a duty by the agency to record and maintain the information therein. See *Logston v. State* (Ind.1989), 535 N.E.2d 525; *Kinkade v. State* (Ind.App.1989), 537 N.E.2d 541; *People v. Boyd* (1978), 66 Ill.App.3d 582, 23 Ill.Dec. 620, 384 N.E.2d 414. See, also, Annotation (1977), 80 A.L.R.3d 414. In general, there must be either an express requirement or implied duty set forth by statute for the public-record exception to apply other than with respect to activities of the office or agency. Here, insufficient foundation was laid. Nor was there authentication under either Civ.R. 44(A) or Evid.R. 901(B)(1) or (7). See *State v. Emch* (1982), 7 Ohio App.3d 7, 7 OBR 8, 453 N.E.2d 1270; and *Maloney v. Maloney* (1986), 34 Ohio App.3d 9, 516 N.E.2d 251.

Accordingly, the trial court erred in overruling the objections to exhibit J and the admission thereof into evidence, and the first assignment of error is well taken.

█ By the second assignment of error, defendants contend that R.C. 2913.40(B) is unconstitutional because it is vague and overbroad. In support of this contention, defendants rely upon *State v. Young* (1980), 62 Ohio St.2d 370, 16 O.O.3d 416, 406 N.E.2d 499, with respect to R.C. 2923.04(A), and *State v. Wear* (1984), 15 Ohio App.3d 77, 15 OBR 106, 472 N.E.2d 778, with respect to R.C. 959.15, and contend that the deficiencies in the statute in question are equal to or greater than those in the two statutes involved in those cases.

Defendants further contend that the statute imposes strict criminal liability and has no scienter requirement. R.C. 2913.40(B) reads as follows:

"No person shall knowingly make or cause to be made a false or misleading statement or representation for use in obtaining reimbursement from the medical assistance program."

It is clear that as to false or misleading statements, there must be scienter. It can only be with respect to "representations" that the contention can be otherwise. Nevertheless, a fair reading of the statute leads only to the conclusion that the words "false or misleading" modify both the word "statement" and the word "representation." When so construed, the gravamen of the offense is not any representation to obtain reimbursement from the Medicaid program regardless of the accuracy of the representation or any adverse effect resulting from it. There are several rules of construction, including R.C. 1.47 and 1.49, which aid in the construction of this particular portion of the statute, especially R.C. 1.47(B), which sets forth the presumption that "[t]he entire statute is intended to be effective." Perhaps use of the word "misrepresentation" rather than the word "representation" would have made the statute clearer, in which case the statute would no longer be absurd with respect to representations. Nevertheless, we find it is appropriate to construe the statute in the fashion that we have so that the adjectives "false" and "misleading" modify the word "representation" as well, giving full effect to the statute and all of the words thereof. Accordingly, the statute is valid insofar as it provides that "[n]o person shall knowingly make or cause to be made a false or misleading statement or representation" in order to obtain Medicaid reimbursement. Furthermore, properly construed, scienter is required. Acting "knowingly" is defined by R.C. 2901.22(B) as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

The gravamen of the offense is the making of a false or misleading statement or representation for use in obtaining Medicaid reimbursement with knowledge that the statement is false or misleading. Defendants contend that the statute is vague because it does not expressly require that the person knowingly making the false or misleading statement to obtain Medicaid reimbursement intends as a result thereof to obtain greater reimbursement than he would be entitled to otherwise. Thus, argue defendants, if a provider intentionally submits a statement which will entitle the provider to a lower reimbursement than he is otherwise entitled to, he would violate this statute. We agree that the statute is sufficiently ambiguous that such a result could

be inferred therefrom. Turning to the rules of construction, R.C. 1.47 provides that:

"In enacting a statute, it is presumed that:

" * * *

"(C) A just and reasonable result is intended[.]"

R.C. 1.49 provides that if a statute is ambiguous, the court, in determining legislative intent, should consider, *inter alia*, "[t]he object sought to be attained" and "[t]he consequences of a particular construction." Furthermore, the overbreadth doctrine applies only to First Amendment and other fundamental right issues and has no application to statutes such as the one in question prohibiting Medicaid fraud. See paragraph three of the syllabus of *Cincinnati v. Hoffman* (1972), 31 Ohio St.2d 163, 60 O.O.2d 117, 285 N.E.2d 714. In other words, even though application of the statute might be unconstitutional with respect to persons making innocent false or misleading statements in connection with Medicaid reimbursement without intent to gain any advantage thereby, defendants are not entitled to rely upon that issue so long as the statute is not unconstitutional as applied to them. See, also, *State v. Van Dyne* (1985), 26 Ohio App.3d 95, 26 OBR 270, 498 N.E.2d 221; and *State v. Loless* (1986), 31 Ohio App.3d 5, 31 OBR 19, 507 N.E.2d 1140. Accordingly, we conclude that R.C. 2913.40(B) is constitutional and can be constitutionally applied to defendants. The second assignment of error is not well taken.

For the foregoing reasons, the first assignment of error is sustained, the second assignment of error is overruled, the judgments of the Franklin County Common Pleas Court are reversed, and the causes are remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgments reversed*
*and causes remanded.*

BOWMAN and PETREE, JJ., concur.