The STATE of Ohio, Appellee,

v.

BROWN et al., Appellants.

[Cite as *State v. Brown* (1994), 99 Ohio App.3d 604.]

Court of Appeals of Ohio,
Franklin County.

Nos. 93AP–1076, 93AP–1077.

Decided Dec. 29, 1994.

*Lee Fisher,* Attorney General, *Jordan Finegold* and *Constance A. Nearhood,* Assistant Attorneys General, for appellee.

*Vorys, Sater, Seymour & Pease, Paul J. Coval* and *Glenn V. Whitaker,* for appellants.

---

CLOSE, Judge.

Defendants-appellants, Clyde D. Brown, M.D. and Clyde D. Brown, M.D. & Associates, Inc., appeal from judgments of conviction rendered in the Franklin County Court of Common Pleas.

Appellants were indicted in a seven-count indictment. The first three counts of the indictment were against Dr. Brown personally, and the remaining four counts were against Dr. Brown's corporation. Counts one, two, four, five and six of the indictment alleged Medicaid fraud, a violation of R.C. 2913.40. Counts three and seven alleged theft by deception, a violation of R.C. 2913.02(A)(3).

After the presentation of the prosecution's case-in-chief, the trial court dismissed counts two and six, pursuant to Crim.R. 29(A). The jury returned a verdict of not guilty as to counts one and five. With respect to the remaining three counts, the jury found Dr. Brown guilty of count three and Dr. Brown's corporation guilty of counts four and seven. The trial court, thereafter, granted a judgment of acquittal on count four. Thus, each appellant was convicted of one count of theft by deception. These judgments are now the subject of this appeal.

Appellants bring five assignments of error:

"I. The Trial Court Erred in Denying Appellants' Motion for Judgment of Acquittal in View of the Prosecution's Failure to Establish Each and Every Element of the Offenses Charged Beyond a Reasonable Doubt.

"II. The Trial Court Erred in Denying Appellant Dr. Brown's Post–Trial Motion for Judgment of Acquittal on Count Three of the Indictment on the Ground that Dr. Brown was Not Properly Charged by Grand Jury Indictment with Respect to Count Three.

"III. The Trial Court Erred in Failing to Conduct an In Camera Review of the Grand Jury Minutes to Determine Whether the Theft by Deception Charge Against Dr. Brown Was Predicated on a Factual Finding That He Misbilled the Miscellaneous Medical Supply Code to the Medicaid Program.

"IV. The Prosecution Presented *No* Evidence That Appellants Knowingly Engaged in Misconduct With Respect to Any of Their Medicaid Billings, or That Appellants Had Not Provided the Services to the Patients for Whom They Billed the Miscellaneous Medical Supply Code. Accordingly, the Jury Verdicts on Counts Three and Seven Are Against the Manifest Weight of the Evidence, and the Trial Court Erred in Entering Judgment on the Basis of the Jury's Verdicts.

"V. The Trial Court Abused Its Discretion in Admitting Evidence Offered by the Prosecution Which Was Not Properly Authenticated, Contained Multiple Levels of Hearsay, and Was Not Relevant to the Issues in This Proceeding."

■ In the first assignment of error, appellants take issue with the refusal of the trial court to grant a judgment of acquittal pursuant to Crim.R. 29. It is by now axiomatic that "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

In making the review required of us, this court must construe the evidence in the light most favorable to the state. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 555 N.E.2d 689. With that in perspective, we will review appellants' allegation that the state failed to establish two essential elements of the charged offense. The first element appellants challenge is whether the offense was knowingly committed. The second element challenged is whether any false or misleading statements were made or whether any other deception was present.

■ There is no question that, without an admission of some sort by appellants, there can never be direct evidence on the issue of whether appellants acted knowingly. Consequently, our review will focus on whether reasonable inferences could have been drawn from the facts, which are supported by the evidence, in order to conclude that the acts of appellants were committed knowingly.

As "knowingly" is the required culpable mental state, and this is not a strict liability issue, we must examine the meaning of "knowingly."

R.C. 2901.22(B) provides:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain

nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

The prosecution's case-in-chief indicated that Dr. Brown billed for "overhead" because "he wasn't getting enough reimbursement from Medicaid." Further testimony indicated that he billed the miscellaneous supply code for every patient regardless of what supplies were used, and that an auditor had talked to Dr. Brown about the proper use of the codes. Additionally, a 1989 Medicaid provider handbook, which explained correct and incorrect uses of the reimbursement codes, was seized from his office. When all is taken together and construed in favor of the state, we conclude that sufficient evidence supports the element of "knowingly" and, therefore, acquittal, pursuant to Crim.R. 29, would have been improper as to that element. The trial court's denial of the motion was proper.

With regard to the element of deception, appellants contend that medical supplies were, in fact, provided to the patients. On this basis, appellants claim that there were no false or misleading statements. The state presented evidence, however, that the supplies which Dr. Brown provided and for which he sought reimbursement were not reimbursable under Code 00099. The Medicaid rules prohibit separate reimbursement for medical supplies utilized in the office or clinic. Dr. Brown did, in fact, bill under Code 00099 for items such as cotton balls, paper goods, needles, syringes, etc., which were used during his patients' office visits. Without being distracted from the principal elements of the offense by the difficult arguments on either side, the reality is that it was improper to bill under Miscellaneous Supply Code 00099 for supplies used in the office. As there was sufficient evidence to indicate that appellants' billings were improper and that appellants knowingly sought reimbursement in this improper manner, the trial court's judgment denying appellants' motion for acquittal was proper.

Appellants' first assignment of error is overruled.

■ In their second assignment of error, appellants contend that the trial court erred in denying the post-trial motion for judgment of acquittal on count three of the indictment. Obviously, this assignment of error pertains to Dr. Brown individually and not the corporation.

The post-trial motion alleged that appellant was not properly charged by the grand jury indictment with respect to the theft by deception against Dr. Brown personally. The alleged error arises from the prosecutor's action concerning the bills of particulars. The prosecutor filed a bill of particulars on September 16, 1992, an amended bill of particulars on January 5, 1993, and a supplement to the amended bill of particulars on January 28, 1993. Appellants argue that by amending the bill of particulars, the prosecutor changed the nature of the offenses for which Dr. Brown was indicted.

The indictment stated, in relevant part, that:

" * * * Clyde D. Brown * * * did, with purpose to deprive the owner * * * of * * * monies, knowingly obtain or exert control over said property * * * by deception."

In pertinent part, the original bill of particulars alleged that:

" * * * The deception consists of billings * * * for laboratory tests for metabolic profiles, heptatic [*sic*] profiles, renal profiles and arthritis profiles as if those tests were performed as individual laboratory procedures when all four procedures were performed * * * simultaneously; and billing for CPT code 00099, miscellaneous medical supply, when he was not providing said service to, or on behalf of the recipient for whose account he billed. * * * "

The amended bill of particulars charged as follows:

" * * * The deception consists of billings * * * for laboratory tests for metabolic profiles, heptatic [*sic*] profiles, renal profiles and arthritis profiles when these profiles were not performed, and billing for Procedure Code 00099, miscellaneous medical supply, when he was not providing said service to, or on behalf of the recipient * * * and billing for Procedure Code 00336, shipping and mailing, when he was not providing said service to, or on behalf of the recipient for whose account he billed. * * * "

Finally, the supplement stated the following: "where laboratory tests are referenced, * * * the State will contend that said laboratory tests performed were services of a preventive nature."

In essence, the indictment alleged that theft by deception occurred. The bill of particulars, as originally filed and later amended, consistently stated that deception occurred when appellant sought reimbursement for the service (Code 00099, miscellaneous medical supplies) without providing *that* service. The supplement to the amended bill of particulars did not change this allegation. As noted above, appellant billed under Code 00099 for services (the provision of miscellaneous supplies) not authorized to be reimbursed thereunder. Appellant was charged with and convicted of theft by deception for billing under the Miscellaneous Supply Code 00099 when he did not provide services reimbursable under that code. Although the nature of the other charges was altered in the amended and supplemental bills of particulars, the nature of the charge for which he was convicted remained consistent.

With respect to the other charges, it is now critical that we analyze their impact, if any, on the trial of appellant's case in light of the trial court's instructions to the jury. In pertinent part, the jury instruction stated:

"＊ ＊ ＊ The deception is alleged to consist of billings to Ohio's Medical Assistance Program, Medicaid, for Procedure Code 00099, when he was not providing that service to the Medicaid recipients whose accounts were billed; and billing for Procedure Code 00336 when he was not providing said services to or on behalf of the recipients whose accounts were billed."

The court continued, later in its instructions, as follows:

"You will determine from these facts and circumstances whether there existed at the time in the mind of Clyde D. Brown an awareness of the probability that the claims submitted by Clyde D. Brown, M.D. and Associates, Inc. to Ohio's Medical Assistance Program, Medicaid, for Procedure Code 00336 were false or misleading, and whether he acted knowingly in obtaining or exerting control over monies belonging to the state of Ohio by deception for billings for Procedure Code 00099 and Procedure Code 00336."

It is certainly axiomatic that Section 10, Article I of the Ohio Constitution provides the accused the right to "demand the nature and cause of the accusation against him and to have a copy thereof." An indictment, however, need not specify the specific conduct charged as long as a statement is presented in ordinary and concise language, in the words of the section of the Revised Code describing the offense, or in any words sufficient to give the accused notice of the offense charged. See R.C. 2941.05.

It is in the implementation of the bill of particulars, under R.C. 2941.07 and Crim.R. 7, that the specificity of the indictment can be expanded. Crim.R. 7(E) provides that, upon written request, "the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charged and of the conduct of defendant alleged to constitute the offense." Crim.R. 7(E) further provides that "[a] bill of particulars may be amended at any time subject to such conditions as justice requires." Pursuant to Crim.R. 7(D), amendments may be made any time, "provided no change is made in the name or identity of the crime charged."

The Ohio Supreme Court explained the purpose of a bill of particulars, over thirty years ago, in *State v. Fowler* (1963), 174 Ohio St. 362, 364, 22 O.O.2d 416, 417, 189 N.E.2d 133, 134–135, as follows:

"The purpose of the bill of particulars is to inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto."

The court further explained that:

"＊ ＊ ＊ the basic right is the same in either instance [misdemeanor or felony] and an accused must be explicitly informed of the offense with which he is charged so that he has an adequate opportunity to prepare his defense." *Id.*

Both the indictment and the bills of particulars clearly described theft by deception. The indictment, in fact, stated the charge in the words of the Revised Code describing the offense. While language in the bill of particulars was amended twice with respect to appellants' conduct in connection with laboratory tests for metabolic, hepatic, renal and arthritic profiles, the trial court apparently found the evidence insufficient to present to the jury. The jury instructions, instead, limited the jury's consideration to billings for miscellaneous medical supplies under Code 00099 and billings for shipping and mailing under Code 00336. We find no error with respect to either of these charges. The charge of deception for billing under Code 00099 was stated consistently in the three bills of particulars, and the charge of deception for billing under Code 00336, although added in the amended bill of particulars, remained consistent in the supplement to the amended bill of particulars. Furthermore, the amended bill of particulars, which added Code 00336, was filed more than three months before trial.

All of the error pertained to the charge regarding how the laboratory procedures for the medical profiles were performed and billed. Three inconsistent theories were alleged. In the first bill of particulars, it was claimed that the various profiles were billed separately when only one procedure was performed. This allegation was subsequently changed to allege that these services were simply not performed at all. The supplement to the amended bill of particulars changed the charge again by stating, in essence, that the services were performed but only as a preventive measure and, therefore, were not reimbursable. While there may very well have been error in the bill of particulars with regard to the medical profiles, the error was not prejudicial because the charge was dismissed and not considered by the jury.

There can be no question that appellant was charged with theft by deception. The bills of particulars, as properly filed and amended, consistently alleged deception based upon improper billings under Codes 00099 and 00336. Contrary to appellants' contention, the trial court's jurisdiction was valid because the indictment was not inconsistent with the bills of particulars. A plain reading of the indictment, coupled with a reading of the bills of particulars, leads to the conclusion that the nature of the charge did not change.

Appellants' second assignment of error is overruled.

In their third assignment of error, appellants claim the trial court should have conducted an *in camera* review of the grand jury minutes to ensure the grand jury did, in fact, consider Miscellaneous Supply Code 00099 as a basis for counts three and seven. Appellants have alleged that the amendments to the bills of particulars create an inference that the grand jury did not consider Code 00099 when it charged appellants. Given our discussion of the bills of particulars in the second assignment of error however, this allegation is not well taken. The

original, amended and supplemented bills of particulars consistently alleged that appellants billed under Code 00099 without providing that service. There is, therefore, no inconsistency which would give rise to a need for review.

In any event, the shorthand reporter is required, under R.C. 2939.11, to withdraw from the jury room before the jurors begin to express their views or take their vote on the matter before them. It is axiomatic, therefore, that the transcripts do not reflect this information. Even if the transcripts of the grand jury had been reviewed, appellants would not have learned the reason for the indictment that was returned. The trial court's grant of the relief requested by appellants would have been a meaningless act, and the failure to conduct an *in camera* review cannot be error. Appellants' third assignment of error is overruled.

In their fourth assignment of error, appellants claim the jury verdicts were against the manifest weight of the evidence. The discussion underlying this assignment of error is, in many ways, merely a rehashing of the previous discussions made in the first and second assignments for error. We overrule this objection as it relates to "knowingly" because the evidence, outlined in our holding in the first assignment of error, would, if believed, convince the average mind of the defendants' guilt beyond a reasonable doubt. This evidence includes testimony from appellants' former employee that appellants billed this code because they "weren't getting enough reimbursement from medicaid." Seized from appellants' office was a Medicaid Handbook explaining the permissible uses of the code. As the trial judge correctly stated in his decision on the motion for judgment of acquittal:

"There was evidence that Dr. Brown practiced deception in billing the department of human services for miscellaneous medical supplies under billing code 00099. There was sufficient evidence that providers, including Dr. Brown, were advised that code 00099 related only to medical supplies to be used·in the patient's home and that normal office supplies such as cotton balls, and similar items, were not to be billed under that code. It was not necessary that the state prove that [appellants] did not use cotton balls or other similar supplies during office visits. It was sufficient to prove that Dr. Brown knowingly deceived the Department of Human Services into paying for items which were already included [in] reimbursement for his basic patient fee. * * * That constitutes deception."

To the extent appellants again argue that no deception occurred because medical supplies were provided, we again overrule their objection. There was never a claim that miscellaneous supplies were not provided. As noted above, the violation stems from the fact that these services were improperly billed. The jury instructions reflect this. Specifically, the instructions required the jury to

determine whether or not Dr. Brown was providing *that* service, the service reimbursable under Code 00099. The jury was not asked to determine whether or not any services were provided at all but, rather, whether or not appellants improperly billed under Code 00099.

Appellants' fourth assignment of error is overruled.

■ In the fifth assignment of error, appellants dispute the admissibility of various documents into evidence, namely invoices (State's Exhibits B1–B42), computer-generated remittance advice statements (Exhibits C1–C42), and "super bills" from appellants' office (Exhibits E1–E736).

Recognizing that the admissibility of evidence is left to the sound discretion of the trial court, we begin our examination by looking at the disputed evidence. Our review is limited to determining whether the trial court abused its discretion. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 567 N.E.2d 1291.

State's Exhibits B1–B42 were invoices submitted by appellants to the state for Medicaid reimbursement under procedure Code 00099 for miscellaneous medical supplies. Appellants allege that no witness identified the billings as originating in appellants' office and no witness testified as to their manner of preparation. Consequently, appellants claim the invoices were not properly authenticated.

Evid.R. 901(A) provides that:

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

A review of the record reveals that the invoices were properly identified and authenticated. Robert Lewis, Chief of the Bureau of Claims Services ("ODHS"), testified regarding the payment procedure under the Medicaid program. He explained that the invoices were the means by which providers, such as appellants, submitted claims for payment. He also testified that appellants were given a unique provider identification number that appeared on all claims submitted by appellants. Included on each invoice submitted for payment is the name and address of the provider. Lewis identified Exhibits B1–B42 as Medicaid claims submitted by appellants for payment.

John Canfield, a former employee, testified that Exhibits B1–B42 were copies of invoices generated from appellants' office. In addition, he identified the doctor's signature stamp on the invoice. Canfield explained the process whereby appellants' name, address and provider number were placed on the invoices. He also explained that other necessary information came from the super bills which were also generated in appellants' office. Three other witnesses confirmed this

procedure. There can be no serious question that Exhibits B1–B42 were properly identified and admitted.

■ With regard to state's Exhibits C1–C42, appellants allege that these documents constitute hearsay under *State v. Vogelsong* (1992), 82 Ohio App.3d 354, 612 N.E.2d 462, because they set forth matters in addition to the "activities of the office or agency." Exhibits C1–C42 are computer-generated remittance advice statements which list the claims that the state has processed for appellants. The statements are prepared by the state to inform providers which services were reimbursed.

There is no question, however, that the foundation provided at trial established these reports as "remittance advice statements" prepared by ODHS. Appellants, in fact, concede that, at least for limited purposes, Exhibits C1 through C42 meet the public record and report requirements of Evid.R. 803(8)(a), which excepts from the hearsay rule "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency * * *."

Contrary to appellants' contentions, we find *Vogelsong* inapposite here because the necessary specificity was provided to establish that the computer records were created and utilized by the state agency, ODHS. In *Vogelsong*, this court held that mere testimony that certain information is accessed through a computer operated by the public agency is insufficient foundation to establish admissibility under the public records exception to the hearsay rule. In the case *sub judice*, testimony was presented on all aspects of the process, from the entry of data provided by the doctor, to the preparation of the remittance advice statements (Exhibits C1–C42).

The state presented specific evidence, in the only manner possible, tracing the properly admitted invoices through the state's computer system to the generation of warrants and remittance advice forms which, in turn, corresponded exactly to the invoices submitted. This included testimony that the remittance advice statements were prepared by ODHS to inform providers which services were being reimbursed.

The data entry manager for ODHS testified that, upon receiving the invoices from the provider, the information is keyed into her computer. The data conversion administrator from DAS testified that they also process claims/invoices from providers and that they process the claims in the same manner as ODHS. Upon receipt of this data, the Chief of the Bureau of Technical Services of ODHS testified that he prepared the remittance advice statements which caused the warrant and the Exhibits C1 through C42 to be remitted to the provider, Dr. Brown. Testimony was presented which explicitly indicated that no

changes were made to the information received from the providers. In other words, information received from Dr. Brown's office, as listed on the invoices, was keyed into the computer "as they saw it." Additionally, a special agent for the Division of Medicaid Fraud Control testified that he matched the remittance advice statements in state's Exhibits C1–C42 to the invoices in state's Exhibits B1–B42 and found that they directly corresponded with each other.

Based upon the above testimony, it is clear the trial court acted well within its discretion in determining that these matters had been properly authenticated and admitted into evidence. To the extent that Evid.R. 803(8)(a) allows for the admission of these records upon a proper foundation, that foundation has been shown and these exhibits were properly admitted. The remittance advice statements are "records, reports or data compilations" of a public office, the ODHS, which set forth "the activity of the agency." Specifically, the remittance advice forms set forth the payment of Medicaid claims to providers. There is no question that the foundation established that these reports were remittance advice statements prepared by ODHS.

Finally, appellants take issue with the so-called "super bills," which are Exhibits E1 through E736. Appellants challenge the relevance of these documents. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"Super bills" are generated in the provider's office. They are the source documents for Medicaid billings and are essentially part of how the doctor's office was run. A super bill is created for each patient and is a means of keeping track of what services are provided to each patient. It is from these super bills that providers generate their invoices and claims for Medicaid reimbursement.

The testimony established that Dr. Brown directed prices and services to be included on the super bills, and that the super bills were source documents used to prepare the billings submitted to ODHS. It is clear that these super bills were commonly used in the office as a source for recording services and for generating bills for the services performed. In fact, the state's special agent personally matched the "super bills" seized in appellant's office with the invoices shown in State's Exhibits B1 through B42 and found them to be identical.

If nothing else, the super bills were relevant to the issue of whether or not Dr. Brown was directly involved in the office procedures. Therefore, the super bills were relevant, at least to the extent that they allowed the jury to infer that Dr. Brown's actions were "knowing." Accordingly, we find no abuse of discretion on the basis of relevance as to Exhibits E1 through E736.

Each of the items of evidence was properly admitted, and appellants' fifth assignment of error is overruled.

Appellants' assignments of error are overruled, and the judgments of the trial court are affirmed.

*Judgments affirmed.*

PEGGY BRYANT, J., concurs.

WHITESIDE, P.J., dissents.

WHITESIDE, Presiding Judge, dissenting.

Being unable to concur in the majority opinion, I must respectfully dissent, since the second assignment of error should be sustained.

The indictment in this case contained seven counts. The first three counts of the indictment were against Dr. Brown ("the defendant") personally, and counts four, five, six and seven were against the defendant's corporation. Counts one, two, four, five and six of the indictment alleged Medicaid fraud, a violation of R.C. 2913.40. Counts three and seven alleged theft by deception, a violation of R.C. 2913.02(A)(3).

After the prosecutor presented its evidence at trial, the trial court dismissed counts two and six pursuant to a Crim.R. 29(A) motion.[1] The jury returned a verdict of not guilty as to counts one and five. Of the remaining counts, the jury found defendant guilty of count three and the defendant's corporation guilty of counts four and seven. The trial court granted a judgment of acquittal to defendant's corporation on count four. Thus, only two counts remain and are the subject of this appeal.

The second assignment of error is determinative. By the second assignment of error, defendant contends that the trial court erred in denying defendant's post-trial motion for judgment of acquittal on count three of the indictment. Defendant filed a post-trial motion for judgment of acquittal or, in the alternative, for a new trial. The basis for the motion alleged that defendant was not properly charged by grand jury indictment with respect to count three. The assignment of error arises from the prosecutor's actions concerning the bills of particular. Pursuant to a timely motion, the prosecutor filed a bill of particulars on September 16, 1992. Nearly four months later, on January 5, 1993, an amended bill of particulars was filed. The prosecutor then filed a "supplement" to the amended bill of particulars on January 28, 1993. Defendant argues that by

---

1. The remaining counts were renumbered before being submitted to the jury. However, for the sake of clarity, the original numbers will be used throughout this dissent.

amending the bill of particulars, the prosecutor changed the nature of the offense for which he was indicted.

The indictment in count three charged as follows:

"Do find and present that on or about January 1, 1989, to September 5, 1991, Clyde D. Brown, M.D., within Franklin County, Ohio, did, with purpose to deprive the owner, the State of Ohio, of property or services, to wit: monies, knowingly obtain or exert control over said property or services by deception, said property or services being one hundred thousand dollars ($100,000.00), or more, in violation of Ohio Revised Code Section 2913.02(A)(3) a felony of the second degree."

The original bill of particulars filed in this case stated as to count three of the indictment:

"That on or about January 1, 1989 to September 5, 1991, Clyde D. Brown, M.D., within Franklin County, Ohio, did, with purpose to deprive the owner, the State of Ohio, by and through the Ohio Department of Human Services, Medicaid Division, of property or services, to wit: monies, knowingly obtain or exert control over said monies by deception. The deception consists of billings to the Ohio Department of Human Services, Medicaid Program for laboratory tests for metabolic profiles, heptatic [*sic*] profiles, renal profiles and arthritis profiles as if those tests were performed as individual laboratory procedures when all four procedures were performed on an automated multi-channel test machine in one procedure which performed all four profiles simultaneously; and billing for CPT code 00099, miscellaneous medical supply, when he was not providing said service to, or on behalf of the recipient for whose account he billed. The value of said property to wit: monies is two hundred thirty-one thousand, nine hundred sixty-four dollars and twenty eight cents ($231,964.28). This is in violation of Ohio Revised Code Section 2913.02(A)(3) a felony of the second degree."

The amended bill of particulars changed the statement of count three of the indictment to the following:

"That on or about January 1, 1989 to September 5, 1991, Clyde D. Brown, M.D., within Franklin County, Ohio, did, with purpose to deprive the owner, the State of Ohio, by and through the Ohio Department of Human Services, Medicaid Division, of property or services, to wit: monies, knowingly obtain or exert control over said monies by deception. The deception consists of billings to the Ohio Department of Human Services, Medicaid Program for laboratory tests for metabolic profiles, heptatic [*sic*] profiles, renal profiles and arthritis profiles when these profiles were not performed, and billing for Procedure Code 00099, miscellaneous medical supply, when he was not providing said service to, or on behalf of the recipient for whose account he billed; and billing for Procedure

Code 00336, shipping and mailing, when he was not providing said service to, or on behalf of the recipient for whose account he billed. The specific conduct is detailed in Attachments A and B. The value of said property to wit: monies, is two hundred fifty-five thousand three hundred seventy-seven dollars and forty nine cents ($255,377.49). This is in violation of Ohio Revised Code Section 2913.02(A)(3), a felony of the second degree."

The supplement to the amended bill of particulars stated:

"The State hereby supplements its Amended Bill of Particulars, filed on January 5, 1993, as follows:

"As to Counts II, III, VI, and VII, where laboratory tests are referenced, which specific conduct is detailed in Attachment B of the Amended Bill of Particulars, the State will contend that said laboratory tests performed were services of a preventive nature. This contention is in addition to all other contentions contained in the Amended Bill of Particulars."

The jury instruction given by the trial court as to count three was as follows:

"Now, let me go to count 2 [original count three]. In count 2, Dr. Clyde Brown is also charged with theft by deception or I should say he is charged with theft by deception. Before you can find him guilty, you must find beyond a reasonable doubt that during the period January 1, 1989 to September 5, 1991, and in Franklin County, Ohio, Clyde D. Brown knowingly obtained or exerted control over monies belonging to the State of Ohio by deception. The deception is alleged to consist of billings to Ohio's Medical Assistance Program, Medicaid, for procedure code 00099, when he was not providing that service to the medicaid recipients whose accounts were billed; and billing for procedure code 00336 when he was not providing said services to or on behalf of the recipients whose accounts were billed.

"I'll define deception: Deception means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission, which creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

" * * *

"Let me define knowingly. In counts 1 and 2 [original counts one and three], Dr. Brown is charged with offenses that each require proof that he acted knowingly. A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he's aware that such circumstances probably exist.

"Evidence of mistake, accident, lack of information, or other innocent reason may negate the existence—may negate the existence of knowledge.

"Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence.

"You will determine from these facts and circumstances whether there existed at the time in the mind of Clyde D. Brown an awareness of the probability that the claims submitted by Clyde D. Brown, M.D. and Associates, Inc. to Ohio's Medical Assistance Program, Medicaid, for procedure code 00336 were false or misleading, and whether he acted knowingly in obtaining or exerting control over monies belonging to the State of Ohio by deception for billings for procedure code 00099 and procedure code 00336."

The right of an accused to be informed of the charges against him arises under Section 10, Article I of the Ohio Constitution, which provides in pertinent part:

" * * * In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof * * *."

To implement this right, an indictment may satisfy these requirements. However, pursuant to R.C. 2941.05, an indictment need not specify the specific conduct of a defendant which is relied upon to charge the offense. R.C. 2941.05 provides:

"In an indictment or information charging an offense, each count shall contain, and is sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the section of the Revised Code describing the offense or declaring the matter charged to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is charged."

Therefore, an indictment may satisfy the constitutional requirements without being specific. R.C. 2941.07 and Crim.R. 7 provide for a bill of particulars when an indictment does not satisfy the specificity requirements.

The Ohio Supreme Court has stated in *State v. Fowler* (1963), 174 Ohio St. 362, 364, 22 O.O.2d 416, 417, 189 N.E.2d 133, 134, *per curiam*, that the purpose of the bill of particulars "is to inform an accused of the exact nature of the charges against him so that he can prepare his defense thereto." That court also stated:

"The right of an accused to be informed of the *exact nature* of the offense with which he is charged is inherent in our laws and applies equally to cases where one is charged with a misdemeanor or a felony; the basic right is the same in either

620

instance and an accused must be *explicitly informed* of the offense with which he is charged so that he has an adequate opportunity to prepare his defense." (Emphasis added.) *Fowler, op. cit.*

Crim.R. 7(E) defines a "bill of particulars" by stating that "the prosecuting attorney shall furnish the defendant with a bill of particulars *setting up specifically the nature of the offense charged* and of *the conduct of defendant* alleged to constitute the offense." (Emphasis added.) Crim.R. 7 also permits a bill of particulars to be amended, but Crim.R. 7(D) prohibits amendments that change the name or identity of the crime charged as follows:

"The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, *provided no change is made in the name or identity of the crime charged.*" (Emphasis added.)

Additionally, Crim.R. 7(E) permits amendments "at any time subject to such conditions as justice requires." Therefore, amendments cannot be made which violate conditions "as justice requires."

In this case, the amendments made to the bill of particulars changed the identity of the crime charged because they changed the crime which was charged. The original bill of particulars specified in count three that the Ohio Department of Human Services, Medicaid Division, was improperly billed for laboratory tests for metabolic profiles, hepatic profiles, renal profiles and arthritis profiles as if they were performed as individual laboratory procedures when all four were performed in one procedure simultaneously, and also alleged billings for miscellaneous medical supplies under billing code 00099. However, the amended bill of particulars alleged that the laboratory tests were not even performed and added billing code 00336 as an additional basis for culpable conduct. The supplement to the amended bill of particulars added that laboratory tests performed were of a "preventive" nature. These changes clearly changed the nature or identity of the offense, since a bill of particulars must be specific and exact as to both the nature of the offense and the conduct of the defendant alleged to constitute such offense.

Under the original bill of particulars, a defense to the charge could be that no testing was performed at all because it charges that defendant performed four tests at the same time by a single procedure and was entitled to only one charge but billed the four separately as if individually performed. However, the amended bill of particulars stated that defendant billed for tests when they were not in fact conducted. The allegations of the amended bill of particulars would constitute a complete defense to the original bill of particulars since the elements of that defense constitute what the prosecution contends is the charge under the amended bill of particulars. Additionally, the supplement to the amended bill of

particulars contended, in addition to the other contentions in the amended bill of particulars, that those tests which were performed were of a "preventive" nature. If no tests were performed (as alleged in the amended bill), they could not be of a preventive nature. The offenses alleged in the original, amended and supplemental bills of particular are not the same. Both the amendment and the supplement to the bill of particulars changed the nature or identity of the offense as both are defined by the original bill of particulars.

This case is similar to *State v. Lewis* (1970), 21 Ohio St.2d 203, 50 O.O.2d 441, 257 N.E.2d 59, where the defendant's culpable conduct was specified in the indictment. However, the Ohio Supreme Court found that there was insufficient evidence in the record to support a reasonable finding that the offense had occurred in either manner which had been specified in the indictment. The court held in the second paragraph of the syllabus:

"Where an indictment for a conspiracy to defraud under Section 2921.14, Revised Code, specifies the manner or manners of defrauding relied upon as the defrauding part of that conspiracy, a conviction cannot be based upon evidence only establishing a manner of defrauding other than that so specified."

The court reversed the judgment in that case, finding the error to be prejudicial to the defendant, and stated in the third paragraph of the syllabus:

"Where an indictment under Section 2921.14, Revised Code, for conspiracy to defraud specifies the manner of defrauding relied upon as the defrauding part of that conspiracy, the proof of a manner of defrauding that is not even suggested by any allegations of the indictment or by any bill of particulars thereunder will necessarily prejudice the accused. * * * "

Just as in that case, here the defendant was tried under different culpable conduct than the specific conduct which was stated in the original bill of particulars. Considering the fundamental nature of the right of an accused to know the nature of the offense charged against him, under the circumstances of this case, where the prosecutor without leave of court amended the bill of particulars to change the nature or identity of the offense more than once, the error is prejudicial. The Ohio Supreme Court has stated that "[f]ailure to allow a defendant to know what was necessary for his defense was reversible error." *State v. Jester* (1987) 32 Ohio St.3d 147, 149, 512 N.E.2d 962, 965, citing *Fowler, supra.*

Appellee argues that defendant waived this defense by not raising it in a pretrial motion pursuant to Crim.R. 12. Crim.R. 12(B) provides:

" * * * The following must be raised before trial:

"(1) Defenses and objections based on defects in the institution of the prosecution;

"(2) *Defenses and objections based on defects in the indictment*, information, or complaint (*other than failure* to show jurisdiction in the court or *to charge an offense*, which objections shall be noticed by the court at any time during the pendency of the proceeding)[.]" (Emphasis added.)

Crim.R. 12(G) provides that defenses are waived as follows:

"Failure by the defendant to raise defenses or objections or to make requests *which must be made prior to trial*, at the time set by the court pursuant to subdivision (C), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver." (Emphasis added.)

However, Crim.R. 12 does not control in this situation. The error in this case does not arise from a defect in the indictment. Rather, the error in this case is based upon the bills of particulars as to which Crim.R. 12(B) does not mandate pretrial motions. Ordinarily, we must presume that the original bill of particulars filed by the prosecutor is based upon the evidence which was relied upon by the grand jury for the indictment. In this case, the error is that the defendant was indicted upon one charge and the original bill of particulars was filed to define the offense with exactitude, and then it was amended so as to change the nature and identity of the crime, causing defendant to be tried upon a completely different charge from the one for which he apparently was indicted.

The grand jury, not the prosecutor, returns the indictment based upon facts before it. There is no indication in this case that the grand jury relied upon evidence other than that stated in the original bill of particulars to return the true bill. Absent such evidence, the amended bill of particulars could not be an accurate reflection of the evidence relied upon by the grand jury to indict. The bill of particulars defined the specific nature of the offense and the conduct of defendant alleged to constitute the offense. Defendant was tried upon different culpable conduct than that in the original bill of particulars. The problem is not a defect in the indictment but, rather, an improper amendment of a bill of particulars without leave of court first obtained. Defendant was entitled to be tried upon the indictment as explained by the original bill of particulars, not upon new and different charges set forth in the amended and supplemented bills of particulars as to which there is no affirmative indication he was indicted by the grand jury.

The prosecutor attempted by affidavit to explain that the changes made were an attempt only to correct "errors" in the original bill of particulars, and, thus, did not change the nature or identity of the offense. (See affidavit attached to state's memorandum in opposition to defendants' motions for judgment of acquittal, for a new trial, and for *in camera* inspection of grand jury minutes.) However, the amendments to the bill of particulars in this case were substantial,

and the prosecutor failed even to present any evidence to show that the amendment and supplement rather than the original bill of particulars were the accurate reflection of the grand jury indictments which could be disclosed by examination of grand jury minutes, which the prosecutor opposed.

A court will not presume that the prosecutor acted so improperly for some unknown reason by filing a completely inaccurate original bill of particulars as to require correction of such prosecutorial misconduct by amending the bill of particulars to change the nature of the offense and the conduct of defendant alleged to constitute the offense. Only an examination of the grand jury minutes showing that the original bill of particulars did not reflect the offense and conduct upon which the indictment was based could possibly justify such an amendment. Amendments of the bill of particulars in the manner and of the nature here made by the prosecutor could be justified, if at all, only by evidence demonstrating that the original bill of particulars reflects neither the facts presented to the grand jury nor the grand jury's basis for returning the indictment. Here, even the prosecutor's affidavit makes no such suggestion but merely indicates that the evidence to be presented at trial will vary from the original bill of particulars.

Although not specifically mentioned in the second assignment of error, the changes to count seven of the indictment had a similar effect.

The original bill of particulars specified that in count seven the Department of Human Services, Medicaid Division, was improperly billed for laboratory tests for metabolic profiles, hepatic profiles, renal profiles and arthritis profiles as if they were performed as individual laboratory procedures when all four were performed in one procedure simultaneously and also for improper billing under billing codes 00099 and 00336. The amended bill of particulars specified that the culpable conduct involved laboratory tests which were not performed, and billing procedures under both billing codes 00099 and 00336. However, as quoted above, the supplement to the amended bill of particulars also pertained to count seven of the indictment and added that laboratory tests performed were of a "preventive" nature.

As in count three, the amendment to the bill of particulars again contended that the laboratory tests were not conducted. The supplement to the amended bill of particulars also affected count seven in the same manner as count three— an additional contention was made that tests conducted were of a "preventive" nature. These contentions are logically inconsistent. This affected both appellants and a new trial should have been granted upon appellants' motion in order to proceed on the charges in the indictment as defined by the original bill of particulars. Consequently, the second assignment of error is well taken and should be sustained.

By such disposal of the second assignment of error, the other assignments of error would be rendered moot. See App.R. 12(A).

For the foregoing reasons, the second assignment of error should be sustained, the first, third, fourth and fifth assignments of error would be rendered moot, the judgment of the Franklin County Court of Common Pleas should be reversed, and this cause should be remanded to that court for further proceedings in accordance with law and consistent with this dissenting opinion.