DECISION AND JUDGMENT ENTRY
Defendant-Appellant Raymond Meadows appeals from his conviction for murder, in violation of R.C. 2903.02(B). Appellant argues that his conviction is against the manifest weight of the evidence because there is no direct evidence linking him to the crime. Appellant also argues that the trial court erred in permitting certain hearsay testimony about statements allegedly made by the child victim. In addition, appellant argues that he was denied due process of law when the trial court denied his request for discovery of certain records from Scioto County Department of Children Services ("SCDCS") and the Portsmouth Police Department. Finally, appellant argues that the trial court abused its discretion in denying his Crim.R. 29 motion for acquittal. We overrule appellant's assignments of error and affirm the judgment of the trial court.
 STATEMENT OF THE CASE
On August 11, 1998, three-year-old Natasha Cantrell died as a result of severe internal injuries. On October 15, 1998, Tabitha Meadows, Natasha's mother, and appellant, Natasha's stepfather, were indicted for murder, in violation of R.C. 2903.02(B), and involuntary manslaughter, in violation of R.C. 2903.04(A), in connection with Natasha's death. Tabitha subsequently pled guilty to a reduced charge of child endangering.
On November 23, 1998, the state filed notice under Evid.R. 807 that it intended to present out-of-court statements of Natasha at appellant's trial. The state alleged that, between May and August 1998, Natasha told various individuals that appellant had abused her by punching her and pulling her hair and ears.
On November 25, 1998, appellant filed a motion to compel discovery of various records. Specifically, appellant sought copies of 9-1-1 tapes from the morning that Natasha died, as well as any Portsmouth Police Department reports concerning abuse of Natasha. In addition, Tabitha Meadows had submitted to a polygraph test, and appellant requested copies of the questions and results of that test. Finally, appellant sought copies of SCDCS records involving Natasha.
On March 17, 1999, the trial court held a hearing to determine the admissibility of Natasha's hearsay statements under Evid.R. 807. At the hearing, Dr. Gregory Hudson testified that he examined Natasha on May 26, 1998, and observed a severe bruise on the child's left ear. The bruise was so extensive that Dr. Hudson considered it unlikely that Natasha could have injured her ear in an accident. Dr. Hudson concluded that someone had intentionally struck or crushed Natasha's ear, and he reported his suspicion to SCDCS.
In addition to Dr. Hudson's testimony, a number of individuals testified that Natasha told them that appellant had abused her. Ricky Dale Mullins, Natasha's grandfather, testified that on three occasions during the summer of 1998 Natasha told him that appellant hit her on the head, pulled her ears, and punched her in the stomach. Rhonda Sexton, LaDonna Hodge, Sarah Craft, and Sandra Middleton, all neighbors of Natasha, testified to an incident during the summer of 1998 when Natasha was found crying in a garbage bin. Sexton did not recall Natasha making any allegations of abuse, but Hodge, Craft, and Middleton all testified that Natasha accused appellant of pulling her hair and ears. Finally, Harvey Taylor, Natasha's uncle, testified that in June 1998, Natasha told him that appellant had pulled her ears.
On March 24, 1999, the trial court filed an entry denying appellant's motion to compel. On March 26, 1999, the trial court filed an entry finding that the state could introduce Natasha's out-of-court statements at trial pursuant to Evid.R. 807.
The charges against appellant were tried to a jury beginning on April 19, 1999. Much of the evidence presented at trial surrounded the events in the late afternoon and evening of August 10, 1998, the day before Natasha died. There was little testimony concerning Natasha's behavior and appearance throughout the morning and early afternoon that day. While Tabitha testified that Natasha had been playing with some other children during the day, there was no evidence to corroborate this testimony. What is clear, however, is that Natasha became quite ill late in the afternoon.
At approximately 3:00 p.m. on August 10, 1998, Tabitha went to a pawnshop with Terri Conley, appellant's sister. The two were gone between one and two hours. Appellant stayed behind to watch Natasha and Tabitha's infant son, Eric. By the time Tabitha returned home, Natasha was complaining of a stomachache. Natasha also had a bruise on her stomach, which appellant claimed she had suffered from falling on her tricycle.
Roger Conley, Terri's husband and appellant's brother-in-law, testified that he and appellant sat on appellant's porch for about thirty minutes while Tabitha and Terri were at the pawnshop. Apparently, Natasha was in the apartment during this time, although Roger testified that he did not see her. He testified that appellant told him either that Natasha was on the couch, or that she was standing in the corner.
Natasha complained of stomach pains throughout the rest of the night, and she was unable to keep any food down. Tabitha testified that appellant made Natasha stand in the corner for two hours because she wet her pants. Tabitha further testified that Natasha kept sitting down while she was in the corner, so appellant whipped her with a belt. Appellant, however, denied making Natasha stand in the corner or hitting her with a belt.
The family went to bed at approximately 4:00 a.m. on August 11, 1998. Natasha slept in the room with appellant and Tabitha. During the night, Natasha complained that she was thirsty, and appellant took her downstairs to get a drink. A short time later, appellant began yelling to Tabitha that Natasha was not breathing. Natasha was subsequently rushed to a hospital, where she was pronounced dead.
An autopsy conducted by Dr. Leopold Buerger revealed that Natasha had been physically abused. Dr. Buerger noted that Natasha's chest and abdomen were covered in bruises. He determined that these bruises were consistent with Natasha having been punched with a closed fist. Dr. Buerger also found defensive marks on Natasha's hands and arms, as well as marks on her buttocks that indicated she had been struck with a belt or stick. Based on these findings, Dr. Buerger concluded that Natasha's injuries had been caused by intentional physical abuse.
Dr. Buerger's internal examination of Natasha revealed that she died of peritonitis, which is an inflammation of the abdominal cavity that is fatal if left untreated. Dr. Buerger noted injuries to Natasha's liver, pancreas, small bowel, kidneys, and adrenal glands. A tear in the small bowel, which allowed the contents of the bowel to leak into Natasha's abdominal cavity, caused the peritonitis. Dr. Buerger concluded that Natasha sustained her injuries within twenty-four hours of her death.
On April 26, 1999, the jury found appellant guilty of murder and involuntary manslaughter. On April 27, 1999, the trial court filed a judgment entry of conviction and sentence against appellant. The court merged the charges and entered a judgment of conviction for murder, in violation of R.C. 2903.02(B). Pursuant to R.C. 2929.02(B), the trial court sentenced appellant to a term of fifteen years to life in prison.
Appellant filed a timely notice of appeal and presents four assignments of error for our review.
ASSIGNMENT OF ERROR I:
 APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND DEFENDANT WAS DENIED A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS WHERE THE STATES [SIC] CASE WAS PURELY CIRCUMSTANTIAL AND THERE WAS NO DIRECT EVIDENCE LINKING APPELLANT TO THE CRIME.
 ASSIGNMENT OF ERROR II:
 THE TRIAL COURT ERRED AS A MATTER OF LAW/ABUSE OF DISCRETION BY ALLOWING THE ADMISSION OF HEARSAY EVIDENCE UNDER EVID.R 807.
 ASSIGNMENT OF ERROR III:
 THE TRIAL COURT ERRED AS A MATTER OF LAW/ABUSE OF DISCRETION BY DENYING APPELLANT DISCOVERY OF CHILDREN'S SERVICES BOARD RECORDS AND PORTSMOUTH POLICE DEPARTMENT RECORDS AND POLYGRAPH RESULTS REGARDING TABITHA MEADOWS, CO-DEFENDANT, THUS DENYING APPELLANT DUE PROCESS AND HIS RIGHT TO A FAIR TRIAL.
 ASSIGNMENT OF ERROR IV:
 THE COURT ERRED AS A MATTER OF LAW AND/OR ABUSE OF DISCRETION IN DENYING APPELLANT'S CRIM R 29 MOTION FOR ACQUITTAL.
 I.
In his First Assignment of Error, appellant argues that his conviction is against the manifest weight of the evidence. He argues that there is no direct evidence linking him to Natasha's death, and that the circumstantial evidence is consistent with a reasonable theory of his innocence. Appellant also contends that the state's case against him impermissibly relies on inferences resting upon inferences.
Appellant argues that the circumstantial evidence against him must be irreconcilable with any reasonable theory of innocence to support his conviction. Formerly, Ohio courts did apply this standard in criminal cases in which there was no direct evidence linking the defendant to the crime. See State v. Kulig (1974), 37 Ohio St.2d 157, 309 N.E.2d 897, syllabus. Kulig, however, has been overruled by the Supreme Court of Ohio. See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. It is now well settled that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Id.
When we review the weight of evidence after a jury trial, we essentially sit as the "thirteenth juror." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546-547. We must consider the entire record, and we have the discretion to weigh the evidence and evaluate the credibility of witnesses. Id., citing State v. Martin
(1983), 20 Ohio App.3d 172, 485 N.E.2d 717. Nevertheless, we are mindful that the jury has the benefit of viewing the demeanor of witnesses on the stand and is in the better position to determine credibility. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d at 720-721. "A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eley
(1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
Appellant was indicted for murder, in violation of R.C. 2903.02(B). This statute provides, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." R.C. 2903.02(B). The indictment alleged that appellant caused Natasha's death as a proximate result of committing felonious assault against her. Felonious assault, a second-degree felony, is defined in R.C. 2903.11. The statute provides in pertinent part, "No person shall knowingly: (1) Cause serious physical harm to another." R.C. 2903.11(A)(1). Thus, the state was required to prove that appellant knowingly caused serious physical harm to Natasha and that these actions resulted in her death.
The evidence presented at trial established that Natasha's injuries were caused by multiple, intentional blows to her torso, and that she died within twenty-four hours of sustaining these injuries. The day before Natasha died, there is no indication that anything was wrong with her before Tabitha left Natasha at home in appellant's care while she went to the pawnshop. However, it is clear that Natasha was beginning to suffer the effects of her injuries by the time that Tabitha returned home. Appellant spent a portion of this time with Roger Conley, but he was alone with Natasha for a significant period of time as well. In addition, there is no evidence that anyone else was alone with Natasha on that day.
Appellant argues that Tabitha is a more likely suspect in Natasha's death. He notes that Tabitha and appellant lived together for some time, yet Tabitha never reported that Natasha exhibited signs of abuse until she was indicted for murder. A number of witnesses testified that appellant always treated children well, while Tabitha was often harsh with Natasha. Also, Terri Conley testified that Natasha had been complaining of stomach pain for several weeks prior to her death. Terri claimed that appellant, who had moved out of the apartment earlier in the summer, did not move back there until a few days immediately preceding Natasha's death.
As appellant argues, there is no clear, uncontroverted evidence that directly links appellant to Natasha's death. However, the jury's function is to arrive at the truth by weighing competing evidence. The jury may believe all, part, or none of the testimony of any witness who testifies at trial. See State v. Nichols (1998), 85 Ohio App.3d 65, 76,619 N.E.2d 80, 88. Nothing in the record leads us to conclude that the jury clearly lost its way in determining that appellant caused Natasha's death by knowingly causing her serious physical harm. This is not a case in which the evidence weighs heavily against appellant's conviction. Accordingly, we find that appellant's conviction is not against the manifest weight of the evidence.
Appellant also argues that his conviction is based on inferences resting upon inferences. "An inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in by a jury." Hurt v. Charles J. Rogers Transp. Co. (1955),164 Ohio St.3d 329, 130 N.E.2d 820, paragraph one of the syllabus. However, an inference "based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in by a jury." Id. at paragraph two of the syllabus. Moreover, "a given state of facts may give rise to two or more inferences, and in such case one inference is not built upon another but each is drawn separately from the same facts." McDougall v. Glenn Cartage Co. (1959), 169 Ohio St. 522,160 N.E.2d 266, paragraph two of the syllabus.
Based on Dr. Buerger's testimony, one can reasonably infer that Natasha's fatal injuries were the result of intentional abuse. Based on the testimony concerning the events of August 10, 1998, one can also infer that appellant was responsible for inflicting the abuse that caused the fatal injuries. Each inference is separately derived from the evidence presented in the trial court. Thus, appellant's conviction is not based on an inference resting upon an inference.
For the reasons stated above, appellant's First Assignment of Error is OVERRULED.
 II.
In his Second Assignment of Error, appellant argues that the trial court erred by admitting testimony that Natasha had made out-of-court statements accusing appellant of abusing her. Appellant argues that the statements were not admissible because the state did not satisfy the requirements of Evid.R. 807. In addition, he argues that the trial court erred in failing to determine whether Natasha was competent at the time of her statements.
Admission or exclusion of evidence is normally left to the sound discretion of the trial court. See Rigby v. Lake County (1991),58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058. Nevertheless, the trial court must exercise its discretion within the bounds of the rules of evidence. See id. The trial court admitted Natasha's out-of-court statements under Evid.R. 807. Thus, the issue is whether Natasha's statements satisfy the requirements for admission under the rule.
Evid.R. 807, permits admission of an out-of-court statement by a child under twelve years of age describing acts of physical or sexual abuse, if the statement meets certain conditions. The rule requires (1) that the totality of the circumstances support the trustworthiness of the statement; (2) that the child's testimony is not reasonably obtainable; (3) independent proof that an act of abuse occurred; and (4) proper and timely notice to all parties. See Evid.R. 807(A)(1)-(4). Appellant argues that Natasha's statements do not contain guarantees of trustworthiness, that there is no independent proof of an act of abuse, and that the state did not provide adequate notice of the statements it intended to use.
We will first consider appellant's argument that the state's notice of its intent to use Natasha's out-of-court statements was insufficient under Evid.R. 807(A)(4). A party seeking to introduce a statement under Evid.R. 807 must notify all other parties at least ten days before a hearing on the issue. See Evid.R. 807(A)(4). The notice must include the content of the statement, the time and place at which it was made, the witnesses who will testify to the statement, and the circumstances indicating that the statement is trustworthy. See id. Appellant argues that he did not receive sufficient notice of the content of Natasha's statement, the time and place made, and the circumstances guaranteeing trustworthiness.
We find that the state's notice satisfied the requirements of Evid.R. 807(A)(4). The notice listed all of the witnesses who testified at the Evid.R. 807 hearing, and stated that each witness heard Natasha say that appellant pulled her hair and ears. It further stated that all of Natasha's statements were made between May and August 1998. Finally, the notice asserted that Natasha's statements were trustworthy as each witness reported seeing similar injuries, Natasha's statements to each witness were consistent, and her statements were consistent with her injuries. The state's notice was sufficient to alert appellant of the bases for the state's intention to use Natasha's statements.
We next turn to appellant's argument that there is no independent proof of an act of abuse in accordance with Evid.R. 807(A)(3). The trial court found that Dr. Hudson's testimony satisfied the independent-proof requirement. Appellant argues, however, that Dr. Hudson reported his suspicions to SCDCS, but Natasha was not removed from her home. Appellant reasons that Dr. Hudson's conclusions must have been unfounded, so his testimony cannot satisfy the independent-proof requirement of Evid.R. 807(A)(3). We disagree.
The Staff Notes to Evid.R. 807 explain that the independent-proof requirement of division (A)(3) is comparable to the independent-proof requirement of the co-conspirator exemption to the hearsay rule under Evid.R. 801(D)(2)(e). Thus, we may look to the caselaw interpreting the co-conspirator exception for guidance in determining the quantum of proof necessary to satisfy the independent-proof requirement of Evid.R. 807(A)(3). See State v. Black (1993), 87 Ohio App.3d 724, 729,622 N.E.2d 1166, 1170.
Under the co-conspirator exception, the independent-proof requirement is satisfied upon a prima facie showing that a conspiracy existed. SeeState v. Carter (1995), 72 Ohio St.3d 545, 651 N.E.2d 965, paragraph three of the syllabus. A prima facie showing of a fact is a lower standard than proof by a preponderance of the evidence. Prima facie evidence is evidence "sufficient to support but not to compel a certain conclusion and which does no more than furnish evidence to be considered and weighed but not necessarily accepted by the trier of facts." Statev. Martin (1983), 9 Ohio App.3d 150, 152, 458 N.E.2d 898, 901, citingCleveland v. Keah (1952), 157 Ohio St. 331, 105 N.E.2d 402. Thus, the relevant inquiry under Evid.R. 807(A)(3) is whether the proponent of a hearsay statement has presented sufficient evidence, independent of the statement itself, to support a finding that an act of abuse occurred.
We addressed the independent-proof requirement in Black and concluded that the state had failed to satisfy Evid.R. 807(A)(3). The defendant inBlack was accused of molesting his three-year-old daughter. A doctor examined the child and noted a number of injuries to the child's genitals. The doctor testified that "these findings `could be consistent with child abuse,' but that there are also other possible causes."Black, 87 Ohio App.3d at 730, 622 N.E.2d at 1170. We found that this testimony "was clearly insufficient to make a prima facie case that [the child] was a victim of sexual abuse." Id.
The facts in the case sub judice are distinguishable from Black. Dr. Hudson examined Natasha and noted that her entire left ear was severely bruised. He testified that the nature and extent of the bruise was consistent with intentional abuse. He further testified that it was unlikely that Natasha could have sustained such an injury in a fall, or in any other accident. This testimony, on its face, was sufficient to establish that Natasha had suffered physical abuse.
Appellant attempts to rebut Dr. Hudson's testimony by arguing that Natasha was never removed from her home, so SCDCS must have determined that Natasha was not abused. This argument is misplaced because Evid.R. 807(A)(3) requires only a prima facie showing of an act of abuse, not proof by a preponderance of the evidence. Once the state presented sufficient evidence to support a finding that an act of abuse occurred, the trial court was not required to weigh competing evidence against Dr. Hudson's testimony before admitting Natasha's hearsay statements. Thus, we find that the trial court properly held that Dr. Hudson's testimony satisfied the independent-proof requirement of Evid.R. 807(A)(3).
Finally, we consider appellant's argument that Natasha's statements do not contain the necessary guarantees of trustworthiness required by Evid.R. 807(A)(1). Evid.R. 807 provides in pertinent part as follows:
 (A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child or describing any act of physical violence directed against the child is not excluded as hearsay under Evid. R. 802 if all of the following apply:
 (1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.
Evid.R. 807(A)(1).
The trial court made the findings required by Evid.R. 807(A)(1). The court found that Natasha's young age, the spontaneous nature of her statements, and the consistency of these statements provided the necessary guarantees of trustworthiness. The court also noted that Natasha's statements indicating her fear of appellant were likely admissible under Evid.R. 803(2) and (3) (excited utterance and then-existing mental state, respectively).
Appellant argues that the trial court erred in finding Natasha's hearsay statements trustworthy for three reasons. First, appellant contends that there were inconsistencies among several of the witnesses who heard Natasha's statements. Second, appellant argues that several of the witnesses did not believe Natasha when she first told them about the abuse. Third, appellant argues that the trial court erred in failing to determine whether Natasha would have been competent to testify as a witness under Evid.R. 601 at the time that she made her statements.
We find that any inconsistencies among the witnesses who testified at the Evid.R. 807 hearing affect the weight to be given to those witnesses' testimony, not the admissibility of Natasha's statements to them. Each witness testified that Natasha had told them that appellant pulled her hair and ears. We agree with the trial court that the consistency of these statements supports the conclusion that Natasha was telling the truth. The fact that the witnesses disagreed about certain other details does not detract from the trustworthiness of Natasha's statements.
We also find that the fact that certain witnesses initially did not believe Natasha does not render her statements inadmissible. The trial court must consider the totality of the circumstances when determining whether a child's hearsay statements are trustworthy. See Evid.R. 807(A)(1). The fact that one or more witnesses did not initially believe Natasha when she said that appellant abused her may be a relevant factor for the trial court's consideration. However, that one factor does not necessitate a finding that Natasha's statements are not trustworthy. Based on all of the testimony presented at the Evid.R. 807 hearing, the trial court was well within its discretion in finding that the totality of the circumstances supports the trustworthiness of Natasha's statements.
Appellant's argument that the trial court should have determined Natasha's competence to testify is more problematic. Testimonial competence is not one of the requirements of Evid.R. 807. However, the Supreme Court of Ohio has stated that the declarant of any out-of-court statement must satisfy the minimal requirements of testimonial competence for that statement to be admitted under an exception to the hearsay rule. See State v. Said (1994), 71 Ohio St.3d 473, 644 N.E.2d 337.
The syllabus in Said held that "[a] hearing to determine the competency of a potential child witness under Evid.R. 601 must be recorded pursuant to Crim.R. 22." Id. at syllabus. In dicta, the Said Court went on to explain that "a trial court must find that a declarant under the age of ten was competent at the time she made the statement in order to admit that statement under Evid.R. 807." Id. at 477, 644 N.E.2d at 341. The Court reasoned that certain hearsay statements are admissible because surrounding circumstances indicate that the declarant truthfully related his or her impressions. However, those circumstances do not guarantee that the declarant accurately received or recollected those impressions,i.e., that the declarant was competent under Evid.R. 601. See id. at 476-477, 644 N.E.2d at 340.
Natasha was only three years old when she died, so she would not have been presumed competent to testify at the time that she made her out-of-court statements. See Evid.R. 601.[1] Following the reasoning ofSaid, appellant's argument that the trial court should have determined Natasha's competence is correct. Indeed, a strict application of Said to these facts would render Natasha's out-of-court statements inadmissible under any circumstances. The Said Court stressed that "the essential questions of competency can be answered only through an in-person hearing." Said at 476, 644 N.E.2d at 340. Here, the circumstances made it impossible for the trial court to conduct an in-person hearing with Natasha, thereby making it impossible for the court to determine her competence to testify.
We have previously expressed reservations about the reasoning of Said. See In re Shamblin (Sept. 8, 1998), Ross App. Nos. 97CA2347 and 98CA2400, unreported. The case sub judice illustrates certain of the reasons for our concerns. As discussed above, the reasoning of Said would render Natasha's statements inadmissible because Natasha had died and could not attend a competency hearing. However, Evid.R. 807 provides that the death of a child declarant as one situation in which the child's testimony is "not reasonably obtainable." See Evid.R. 807(B)(3). Thus,Said would exclude hearsay statements that Evid.R. 807 plainly contemplates are admissible. See Said at 480, 644 N.E.2d at 342-343
(Resnick, J., concurring in part and dissenting in part).
We find that Natasha's death distinguishes this case from Said. InSaid, as in Black and Shamblin, the trial court was able to examine the child declarant and make a determination regarding the child's competence. Here, the trial court could not possibly conduct an effective competency hearing because Natasha had died. Evid.R. 807 specifically provides that a child's out-of-court statements should be admissible if the child has died and the other requirements of the rule are satisfied. See Evid.R. 807(B)(3). In such a situation, the reasoning of the Said
Court deviates from the clear provisions of Evid.R. 807. Accordingly, we find that Evid.R. 807 does not require the trial court to determine the competence of the declarant of an out-of-court statement under the age of ten when the child's testimony is rendered unavailable because of that child's death.
It is with great reluctance that we depart from the clear pronouncements of the Supreme Court of Ohio. However, Said was not based on any fundamental due process protections afforded to criminal defendants. Rather, Said interpreted Evid.R. 807 in light of the basic premise that hearsay declarants must meet the same basic requirements as live witnesses, including testimonial competence. Evid.R. 807 did not specifically create a presumption that children under the age of ten are competent to testify in abuse cases. As a result, the Said Court reasoned that Evid.R. 601 requires the trial court to determine the competence of a child under the age of ten before admitting the child's out-of-court statements under Evid.R. 807. This interpretation of Evid.R. 807 simply does not apply to a situation such as this, where the child declarant has died.
For the reasons stated above, appellant's Second Assignment of Error is OVERRULED.
 III.
In his Third Assignment of Error, appellant argues that the trial court erred in denying him discovery of certain materials. Specifically, appellant contends that he is entitled to review children services records and police reports of investigations into earlier reports of child abuse involving Natasha. In addition, Tabitha Meadows submitted to a polygraph examination, and appellant contends that he was entitled to review the questions and results of that examination.
The only portion of this assignment of error that appellant argues in his brief is that he is entitled to discovery of the SCDCS records. Appellant presents neither argument nor citation of authority in support of his contention that he is entitled to the police reports or polygraph records. Pursuant to App.R. 12(A)(2), we may disregard any error that the appellant does not argue separately. Thus, we shall consider appellant's argument only with respect to the SCDCS records.
Appellant argues that the SCDCS records likely contain information that is valuable both as exculpatory evidence and to impeach Tabitha and Dr. Hudson. Dr. Hudson reported to SCDCS that he suspected that Natasha had been abused. Appellant contends that he was not living with Tabitha and had no contact with Natasha at the time of Dr. Hudson's report. He argues that the SCDCS records would rebut Dr. Hudson's conclusion that Natasha had been abused and would impeach Tabitha's credibility.
A criminal defendant is entitled to discovery of any evidence that is "favorable to the defendant and material to either guilt or punishment." Crim.R. 16(B)(1)(f); see, also, Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194. Evidence is material to the defense if there is a reasonable probability that disclosure of the evidence would lead to a different result. United States v Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375. A "reasonable probability" means that denying the defendant access to the favorable evidence undermines confidence in the outcome of the trial court proceedings. Id. at 678, 105 S.Ct. at 3381.
In the instant case, appellant is seeking records that SCDCS is required by statute to keep confidential. See R.C. 5153.17. However, R.C. 5153.17 does not require absolute confidentiality, so appellant is entitled to receive any information in the SCDCS records that is material to his defense. See Pennsylvania v. Ritchie (1987), 480 U.S. 39,107 S.Ct. 989. Appellant made a specific request for the SCDCS records, so the trial court was required to conduct an in camera inspection of those documents to determine if they contained evidence material to the defense. See id.
The court below denied appellant's motion to compel discovery of the SCDCS records on the basis that appellant had "failed to show that there is a reasonable probability, grounded on some demonstrable fact, that the records contain material relevant to the Defense." This standard, without more, was improper because it did not reflect that the trial court had conducted an in camera review of the records. However, during the trial, appellant renewed his request for discovery of the SCDCS records, and at that time the trial court stated that it had inspected the records and found no evidence material to the defense. The trial court also stated that it had sealed the records and placed them in the file for our review on appeal. Thus, the trial court conducted an appropriate in camera
review of the SCDCS records.
After conducting an independent review of the SCDCS records, we agree with the trial court that the records do not contain any evidence that is material to the defense. The conclusions of the SCDCS investigator do not rebut Dr. Hudson's medical opinion that Natasha had been abused. Also, there is nothing in the report that impeaches Tabitha's testimony, or implicates her in abusing Natasha. In short, there is no evidence in the SCDCS records that would reasonably have changed the outcome of the trial had they been disclosed to appellant.
We note appellant's argument that an in camera inspection of the SCDCS file is not as effective as a review by an attorney acting as appellant's advocate. The Ritchie Court balanced the criminal defendant's interest in having child abuse investigation reports examined with an "advocate's eye," with the state's interest in maintaining the confidentiality of such records. The Court determined that an in camera review by the trial court adequately protects the defendant's interest in disclosure of favorable evidence without unnecessarily burdening the state's interest in confidentiality. See Ritchie, 480 U.S. at 60-61, 107 S.Ct. at 1003.
For the reasons stated above, appellant's Third Assignment of Error is OVERRULED.
 IV.
In his Fourth Assignment of Error, appellant argues that the trial court erred in failing to grant his Crim.R. 29 motion for acquittal. The trial court may enter a judgment of acquittal under Crim.R. 29 if the state has presented insufficient evidence to sustain a conviction. Crim.R. 29(A). The court may not grant a Crim.R. 29 motion if "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. In reviewing the trial court's denial of a Crim.R. 29 motion, we must construe the evidence in a light most favorable to the prosecution. Statev. Stepp (1997), 117 Ohio App.3d 561, 564, 690 N.E.2d 1342, 1344-1345, citing State v. Brown (1994), 99 Ohio App.3d 604, 651 N.E.2d 470.
Appellant argues that the state's evidence is insufficient to support his conviction under State v. Miley (1996), 114 Ohio App.3d 738,684 N.E.2d 102. In Miley, the state presented evidence that the defendant's infant daughter had been intentionally abused, and that the defendant and the child's mother were the only individuals with access to the child. However, there was no direct evidence that either the defendant or the mother had abused the child. Furthermore, the state could not establish a specific time period during which the child was abused.
The trial court in Miley denied the defendant's Crim.R. 29 motion for acquittal. The jury found the defendant guilty of child endangering, in violation of R.C. 2919.22(A). We reversed, finding that the evidence was insufficient to support the conviction. The circumstantial evidence merely supported a fifty-percent possibility that either the defendant or the child's mother committed the abuse. Furthermore, the evidence did not establish that the defendant should have been aware that the child had been abused. Thus, we found that reasonable minds could only conclude that the state had not proven the material elements of child endangerment beyond a reasonable doubt. Id. at 745, 684 N.E.2d at 107.
We find that the case sub judice is distinguishable from Miley. InMiley, the state was unable to establish a specific period of time during which the abuse occurred. Here, Dr. Buerger testified that Natasha sustained her injuries no more than twenty-four hours before she died. On the day before her death, there is no indication that anything was wrong with Natasha before Tabitha went to the pawnshop. When Tabitha returned from the pawnshop, however, Natasha was complaining of stomach pain. While Tabitha was away, the evidence indicates that appellant was the only one who was alone with Natasha.
Construing all of this evidence in a light most favorable to the state, reasonable minds could conclude that appellant abused Natasha, and that Natasha died from the resulting injuries. Therefore, we find that there is sufficient evidence to support appellant's conviction. We further find that the trial court properly denied appellant's Crim.R. 29(A) motion for acquittal.
Accordingly, appellant's Fourth Assignment of Error is OVERRULED.
Appellant's assignments of error are OVERRULED, and the judgment of the Scioto County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., and Harsha, J.: Concur in Judgment Only.
 _____________________________ David T. Evans, Judge
[1] Evid.R. 601 provides in pertinent part:
Every person is competent to be a witness except:
 (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.