OPINION
{¶ 1} Defendant-appellant, William A. Cook, appeals from two judgment entries rendered by the Franklin County Court of Common Pleas. In case No. 01CR-5022, appellant was found guilty on two counts of robbery and sentenced to four years incarceration, to be served consecutively with case No. 01CR-6776, whereby appellant was found guilty on six counts of robbery and sentenced to four years incarceration. Appellant was sentenced to an aggregate term of eight years incarceration. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} This case arises out of several robbery sprees that took place over a three and one-half week period around the campus and Short North areas in Columbus, Ohio.
 {¶ 3} On July 24, 2001, an unidentified man entered CVS Pharmacy on North High Street and asked Christopher Haynes, employee of CVS Pharmacy, for a package of Skittles. The man then demanded money from Haynes and also threatened to kill Haynes. A newspaper covered the robber's left hand. After Haynes handed the robber some money, he ran out the store. Haynes later identified the robber from a photo array as appellant.
 {¶ 4} Monica Goodwin-Fultz, store manager of CVS, and Fred Coons, shift supervisor, were both present in the store on the night of the robbery. Both individuals were able to identify appellant from a photo array as well as by making in-court identifications.
 {¶ 5} On August 10, 2001, an unidentified man entered Wendy's on North High Street and ordered a medium Sprite from Keitha Huntley who was working at the cash register. The man later returned and ordered a second drink. He then announced to Huntley that he had a gun and to empty the cash register. The unidentified man took the money and left the restaurant. Huntley selected appellant's picture from a photo array and also made an in-court identification.
 {¶ 6} The following day, on August 11, 2001, Daniel Freimark and Josh Drummond were working the evening shift at United Dairy Farmers ("UDF"). Freimark noticed Drummond having problems with the register. Freimark observed an unidentified man holding up his hand that was covered with a light blue jacket. The robber told the men to open their cash register and threatened to kill them if they refused. The robber left the store with $116. Freimark identified appellant from a photo array and also made an in-court identification.
 {¶ 7} Five days later, on August 16, UDF was robbed a second time. Jennifer Marsh and Tracy Johnson were the only two employees working the night shift. Marsh was working the register. An unidentified man walked into the store, got a beer, sat it on the counter, and then walked outside. The man walked back inside and engaged in conversation with a man in line. When he approached the register, he told Marsh to give him the money. The man acted as though he had a gun and threatened to kill Marsh. Marsh described the suspect to police as a male black, 22 to 23 years old, 5'6," and weighing approximately 140 to 150 pounds. Marsh tentatively identified appellant from a photo array, but stated that she was not positive he was the robber.
 {¶ 8} Johnson was restocking the ketchup and mustard at the "coffee island." Johnson noticed a guy going in and out of the store, but did not pay him any attention. Johnson looked up at the register and noticed the man at the counter. As the man walked past Johnson to exit the store he tells her, "[t]his is just some change right here." (Tr. 189.) Johnson walked to the counter to ask Marsh what happened. Marsh indicated that the store just got robbed. Johnson ran outside and observed the man take off his shirt and throw it in the dumpster. Johnson made an in-court identification of appellant as the robber.
 {¶ 9} On August 21, 2001, an unidentified man approached Melanie Fellows, employee of Blockbuster Video. The man said he had a gun in his possession and demanded money from Fellows. Fellows handed the robber the money, and he left the store. The following morning, Fellows was able to identify appellant from a suspect the police had in custody. Fellows also made an in-court identification of appellant as the robber.
 {¶ 10} On the night of August 22, 2001, Lauren Hamilton, a receptionist at Doctor's North Hospital, was robbed. Hamilton reported the incident and a description of the suspect was aired. Columbus Police Officer Kenneth O'Quin heard the dispatch and spotted the suspect matching the description walking in the vicinity. Officer O'Quin took the man into custody. The suspect was identified as appellant. However, Hamilton was unable to identify appellant as the robber.
 {¶ 11} On August 30, 2001, the Franklin County Grand Jury indicted appellant on three counts of aggravated robbery, felonies of the first degree, three counts of robbery, felonies of the second degree, and three counts of robbery, felonies of the third degree. This indictment was for the offenses committed on August 21, 2001 at Blockbuster Video, and on August 22, 2001 at Doctor's North Hospital. These charges were assigned case No. 01CR-5022 (assigned on appeal as case No. 02AP-896).
 {¶ 12} On November 20, 2001, appellant was indicted on four counts of aggravated robbery, felonies of the first degree, four counts of robbery, felonies of the second degree, and four counts of robbery, felonies of the third degree. Appellant was indicted for the incidents that occurred at CVS, Wendy's, and the August 11 and August 16 incidents at UDF. These charges were assigned case No. 01CR-6776 (assigned on appeal as case No. 02AP-897).
 {¶ 13} On June 24, 2002, over appellant's objections, the trial court consolidated the cases for trial. The matter was tried before a jury, and appellant did not testify. After the state rested, defense counsel moved for a Crim.R. 29 acquittal with respect to the aggravated robbery charges. (Tr. 354.) The trial court overruled the motion. (Tr. 362.)
 {¶ 14} In case No. 01CR-5022, involving the incidents that occurred at Blockbuster Video and Doctor's North, on August 21, 2001 and August 22, 2001 respectively, appellant was found not guilty of aggravated robbery, but guilty of two counts of robbery for the incident at Blockbuster's. Upon recommendation of the prosecution, the trial court dismissed Counts 4 through 9 of the indictment. The trial court merged the counts, and sentenced appellant to four years incarceration to be served consecutively with case No. 01CR-6776
 {¶ 15} In case No. 01CR-6776, appellant was found not guilty on four counts of aggravated robbery and not guilty on two counts of robbery. Appellant was found guilty on six counts of robbery for the incidents that occurred at CVS Pharmacy, Wendy's, and the August 11 incident at UDF. The trial court merged the counts and sentenced appellant to four years incarceration. It is from these sentencing entries, that appellant appeals, assigning the following as error:
 {¶ 16} "Appellant's convictions were not supported by the evidence in that the evidence was insufficient to identify him as the perpetrator of the offenses charged. Furthermore, the court erred in overruling appellant's motion for acquittal pursuant to Criminal Rule 29 and conviction was against the manifest weight of the evidence."
 {¶ 17} In his sole assignment of error, appellant raises two contentions. First, appellant argues that his conviction was not supported by the evidence and was against the manifest weight of the evidence because eyewitnesses gave varying physical descriptions of appellant. In particular, appellant contends that eyewitnesses described the robber as being several inches shorter and either described the robber as having little to no tattoos or distinguishing marks on his person.
 {¶ 18} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
 {¶ 19} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, at 387. In so doing, the court of appeals, sits as a "`'thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
 {¶ 20} As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. It was within the province of the jury to make the credibility decisions in this case. See State v. Lakes (1964),120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness").
 {¶ 21} In this case, the following eyewitnesses/victims were able to identify appellant as the man who robbed them:
 {¶ 22} CVS Pharmacy
 {¶ 23} Chris Haynes testified that appellant stood out from the other customers because appellant was not wearing a shirt when he entered the store. (Tr. 140.) Haynes testified that appellant asked for a bag of Skittles, and then told Haynes, "`[g]ive me the money. Give me all the money in your register or I'll kill you. I'm not playing.'" (Tr. 141.) Haynes testified that he threw some money down on the counter and as he was reaching to get more money out of the register, appellant ran out of the store. Haynes testified that he did not see a gun in appellant's hand, but that appellant had a newspaper wrapped around his hand, and pointed it towards Haynes. About a month after the incident, Haynes was able to identify appellant from a photo array. At trial, Haynes described the robber as "kind of built, short haircut * * * about 5'9", 5'10" * * * dark brown skin * * * tattoos on his chest." (Tr. 152-153.) On cross-examination, Haynes testified that he did not notice anything identifying about appellant's teeth, nose, or face. Haynes also made an in-court identification of appellant as the man who robbed him.
 {¶ 24} Monica Goodwin-Fultz testified that as she was walking towards the front of the store, she observed appellant taking money out of the register. (Tr. 159.) Fultz was uncertain if appellant had a weapon, but she noticed appellant had a newspaper over his hand, which gave the appearance that appellant had a weapon. Fultz testified that she was "very positive" that the person she picked out of the photo array was appellant, the person who robbed the store. (Tr. 162.) Fultz described the robber as "male black between the ages of 30 and 40, approximately 5'6" to 5'8" * * * between 140 and 160 pounds." (Tr. 164.) Additionally, Fultz made an in-court identification of appellant as the robber.
 {¶ 25} Fred Coons testified that he noticed appellant as soon as he walked through the door to CVS because appellant was not wearing a shirt. (Tr. 167.) Coons told appellant that he was not allowed in the store without a shirt on. According to Coons, appellant stated that he just wanted to purchase a pack of cigarettes and then he would leave the store. Coons allowed appellant to remain in the store. Thereafter, Coons returned to stocking the shelves. Coons did not see the robbery in progress. However, he heard the cash register drawer rattling, looked up towards the front of the store, and saw Haynes leaning over the register with his head on his arms. Coons walked to the front of the store and Haynes told him that he was robbed. A month after the incident, Coons identified appellant out of a photo array as the man who robbed the store. Coons said he was positive that the man he identified in the photo was the man who robbed the store. Coons also made an in-court identification on the day of the trial.
 {¶ 26} Wendy's
 {¶ 27} Keitha Huntley testified that appellant entered the restaurant and ordered a medium Sprite. As Huntley opened the drawer, appellant told her to empty the drawer, and that he had a gun and if she moved, he would blow her head off. (Tr. 174.) Huntley gave appellant the money out of the cash register and he left the store. Huntley testified that she never saw a gun, but that appellant had his hand under his shirt, which led her to believe that he had a gun. A couple weeks after the incident, Huntley identified appellant from a photo array. Huntley testified that she was "very certain" that the person she picked was the person who robbed Wendy's. (Tr. 177.) Huntley stated that appellant had a short haircut, a band-aid over his right eye, was light-skinned with facial hair, and about 5'7". Huntley did not notice anything unusual about appellant's nose, mouth, teeth, and ears.
 {¶ 28} United Dairy Farmers (UDF) — August 11, 2001[1]
 {¶ 29} Daniel Freimark and Josh Drummond were working second and third shifts when the store was robbed.[2] Freimark testified that he noticed that Drummond was having a difficult time working the computer, which controlled the cash register. Freimark looked over and saw appellant with his hands held up and covered with a light blue jacket. Freimark believed he saw appellant holding a gun. According to Freimark, appellant told Freimark to "`[o]pen your drawer and give me all your money, or I'm going to shoot you.'" (Tr. 219.) Freimark gave appellant a total of $116 in cash and appellant ran out of the store.
 {¶ 30} UDF had a camera in the store that took still photographs. The state presented Freimark with two copies of blown-up photographs of the scene from the night in question. Freimark was able to identify the individuals in the photo. Freimark pointed out for the jury where he, Drummond, and appellant were standing at the time of the robbery. On August 23, 2001, Freimark identified appellant from a photo array. Freimark testified that he had no doubt in his mind that the man he identified in the photo array was the man who robbed the store. (Tr. 225.) Additionally, Freimark made an in-court identification of appellant as the man who robbed UDF on August 11.
 {¶ 31} On cross-examination, Freimark testified that he did not notice anything unusual about the robber's teeth, eyes, nose, or ears. (Tr. 227.) Freimark described the robber to police as standing 5'8" and weighing 150 pounds.
 {¶ 32} Blockbuster Video
 {¶ 33} Melanie Fellows, Assistant Manager at Blockbuster, testified that appellant approached her and told her that he had a gun in his bag and to give him all the money or he would blow her head off. (Tr. 277.) Fellows testified that she could not tell if appellant had a gun, but when he rested his bag on the counter, it made a sound like he had a gun in the bag. After appellant took the money, he left the store. Three hours after the incident took place, Fellows was taken by police officers to make an identification of a suspect the officers had in custody. Fellows identified the suspect as the robber. Fellows made an in-court identification of appellant as the man who robbed Blockbuster's. On cross-examination, appellant recalled identifying the suspect as a black male, 24 to 26 years old, 5'5" to 5'7", 160 to 170 pounds, and wearing a white tank top. (Tr. 284.) Fellows admitted to not being a good judge of height and weight. (Tr. 287.)
 {¶ 34} The state also presented other evidence in an attempt to prove appellant's participation in the robberies. Specifically, a surveillance videotape from Blockbuster`s captured appellant placing his left hand on the counter as he waited for Fellows to give him the money. Officer Michael Malloy viewed the videotape and observed where appellant placed his left hand on the counter. Officer Malloy preserved the area and lifted the palm print. According to Rhonda Cadwallader, Latent Print Examiner, the latent fingerprint lifted from the scene, when compared to appellant's left palm print, was an exact match. (Tr. 308.)
 {¶ 35} Appellant asserts that reasonable doubt exists as to whether he was the robber because of discrepancies in the testimony of the witnesses as they described the robber's height and weight. The descriptions varied between 5'5" and 5'10" in height and 140 to 170 pounds in weight. Appellant is 5'11", weighs 170 pounds, and has a goatee and a mustache, normal teeth, and a number of tattoos, including a teardrop under his left eye. (Appellant's brief, 11.) This court previously noted in State v. Allison (Jan. 15, 2002), Franklin App. No. 01AP-666, that:
 {¶ 36} "A defendant is not entitled to a reversal on manifest weight grounds merely because the evidence presented at trial was inconsistent in some respects. `While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render [a] defendant's conviction against the manifest weight or sufficiency of the evidence.' State v. Nivens (May 28, 1996), Franklin App. No. 95AP-1236, unreported, citing State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. `It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.' State v. Lakes (1964), 120 Ohio App. 213, 217, 201 N.E.2d 809. See, also, State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, unreported. In sum, therefore, it is the province of the jury to believe all, part, or none of a witnesses testimony and, based upon its assessment of the relative credibility of all testimony, draw its own factual conclusions. State v. Antill (1964), 176 Ohio St. 67."
 {¶ 37} In the present case, we find appellant's contentions that the jury lost its way in finding him guilty unpersuasive. The discrepancies are not unusual when eliciting the recollections of witnesses who made their observations while under considerable stress. None of the variations in characteristics described by the witnesses positively excluded appellant as the robber based on gross physical characteristics, and variations in height and weight merely demonstrate that, for these witnesses, identification of appellant hinged more on his facial characteristics than with his physical proportions. All of the witnesses positively identified appellant in open court as well as in photo arrays. The mere fact that the witnesses gave varying descriptions in height and weight, and did not mention facial hair and tattoos, does not render their overall descriptions inaccurate and unreliable to deem this court to conclude that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed," pursuant to Thompkins, at 387.
 {¶ 38} For the foregoing reasons, we find that there was sufficient evidence to support appellant's convictions. Moreover, we further find that such convictions are not against the manifest weight of the evidence.
 {¶ 39} Appellant also contends that the trial court erred in overruling appellant's Crim.R. 29 motion for acquittal with respect to the aggravated robbery charges.
 {¶ 40} "Crim.R. 29(A) requires the court to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offenses alleged in the indictment. `Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.' State v. Apanovitch (1987), 33 Ohio St.3d 19, 23; State v. Dennis (1997), 79 Ohio St.3d 421, 430, 683 N.E.2d 1096. In reviewing a ruling on a Crim.R. 29(A) motion for judgment of acquittal, the reviewing court construes the evidence in a light most favorable to the state. State v. Wolfe (1988), 51 Ohio App.3d 215, 555 N.E.2d 689, paragraph one of the syllabus; State v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported. See, also, State v. Brown (1994), 99 Ohio App.3d 604, 607,651 N.E.2d 470, citing State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus." State v. Clay (Mar. 28, 2000), Franklin App. No. 99AP-404.
 {¶ 41} R.C. 2911.01, which constitutes the crime of aggravated robbery, states in pertinent part:
 {¶ 42} "(A) No person in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 43} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it [.]"
 {¶ 44} The trial court overruled appellant's Crim.R 29 motion stating that, "a reasonable and rational juror could reasonably infer, that the statement, the admission, and the physical actions of hiding something under a bag, in a bag, under a coat, whatever it is, being held in the hand, looking like a gun, sounding like the clunk of a heavy object, those are circumstances from which a rational juror could find that the deadly weapon had been proved beyond a reasonable doubt * * *." (Tr. 361-362.)
 {¶ 45} We note that the trial court properly overruled appellant's motion. Haynes testified that appellant said, "I'll kill you." Haynes said it appeared to him that appellant was hiding a gun under a newspaper that covered his hand. Huntley testified that appellant told her that he had a gun and that if she moved, he would blow her head off. Huntley believed that appellant had a gun hidden underneath his shirt. Freimark testified that appellant had his hand covered with a jacket as appellant threatened Freimark stating, "I am going to shoot you." Finally, Fellows testified that appellant told her that he had a gun in his bag. When appellant placed his bag on the counter, Fellows heard a "clunk," which led her to believe that appellant did indeed have a weapon in his possession.
 {¶ 46} Our review of the record indicates that there was sufficient evidence to convict appellant under R.C. 2911.01(A)(1). As a result, the trial court did not err by overruling appellant's Crim.R. 29 motion.
 {¶ 47} For the preceding reasons, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and TYACK, JJ., concur.
[1] On August 16, 2001, UDF was robbed a second time. Appellant was indicted on one count of aggravated robbery and two counts of robbery for this incident. However, the jury found appellant not guilty on all counts related to the August 16 robbery.
[2] Drummond did not testify at trial.